JOHNS HOPKINS UNIVERSITY *vs.* AUGUSTA L. UHRIG.

AUGUSTA L. UHRIG *vs.* JOHNS HOPKINS UNIVERSITY.

*Conflict of Laws—Construction of Will—Non-Resident Testator—Maryland Statute—Ademption of Legacy.*

A will, a duly authenticated copy of which, accompanied by the official record of its proof by the attesting witnesses as filed in the court of the state in which testator resided, was presented and accepted in an orphans' court of this State for the purpose of administering the local assets, is to be regarded as having been probated in this State, within Code, art. 93, sec. 334, providing that, if a non-resident testator was originally domiciled in this State, his will, when admitted to probate in any orphans' court of this State, shall be governed by and construed according to the Maryland law, unless the will states a contrary intention, it being the policy of the Maryland law, as shown by sections 351 and 354 of that article, to give full effect to an authenticated record, from a competent tribunal of another state, duly evidencing a will, there probated, which disposes of Maryland property. pp. 117-121

The question of the application of the will of a non-resident to assets originating in Maryland, which were intended to be included in a trust created by the will, but which are in the state of testator's residence, is one for the courts of that state to determine. p. 122

A bequest of "all the shares of stock, bonds and other securities" received by testator from his father's estate and which were "specifically described in the agreement" for the partition of such estate, included bonds issued to testator on the reorganization of a corporation, in substitution for shares of stock of the same corporation, which were described in the agree-

ment for partition, especially in view of the fact that a contrary view would involve an intestacy as to such bonds.

pp. 122, 124

The general rule that an ademption results from a sale or other disposition, made by a testator in his lifetime, of property specifically devised or bequeathed, and that the proceeds cannot be followed, for the purposes of the devise or bequest, into property in which they may have been reinvested, does not apply when the testator did not initiate the change of investment, but it resulted from corporate action which he could not control.

pp. 122, 123

An ademption of a legacy of corporate stock did not occur merely because of the conversion of such stock, during testator's life, into other stock, as a result of a change in the corporate name.

p. 124

*Decided February 1st, 1924.*

Appeals from the Orphans' Court of Baltimore City.

Proceedings for the distribution of the Maryland estate of Edward W. Uhrig, deceased, a non-resident of the State. From the order of distribution, Johns Hopkins University and Augusta L. Uhrig separately appeal. Affirmed in part and reversed in part.

The causes were argued before BRISCOE, THOMAS, URNER, ADKINS and OFFUTT, JJ.

*Charles McHenry Howard,* with whom were *Venable, Baetjer & Howard* on the brief, for the Johns Hopkins University.

*Shirley Carter,* for Augusta L. Uhrig.

URNER, J., delivered the opinion of the Court.

The will of Edward W. Uhrig, a resident of California, who died in that state on July 20th, 1921, contains the following provision:

"I give, devise and bequeath to the Safe Deposit and Trust Company of Baltimore, Maryland, all the shares of stock, bonds and other securities which were delivered to me as the one-half share devised and bequeathed to me by my father, John Uhrig, by the trustees under his will, and said property is specifically described in and set forth in the agreement of partition and division executed by myself and others and Anna C. Uhrig and others, trustees, in trust, for the uses and purposes and powers following, that is to say, in trust, to take charge and possession thereof and collect the income and profits, and after paying all taxes and necessary expenses to pay the net income to my wife for and during her natural life or until she again marries, without power of anticipation or alienation, and free from liability for her debts, and from and after her death or marriage then to pay the net income to my sisters, Miss Anna C. Uhrig and Mrs. Amelia Schmidtborn, share and share alike, and upon the death of either sister the net income to the surviving sister, and from and after their deaths then in trust to transfer and convey the same to the trustees of the Johns Hopkins University in Maryland, for the purpose of establishing or assisting to establish and maintain a chair or course in eugenics—the future of man."

A codicil to the will provided that the Safe Deposit and Trust Company of Baltimore, Maryland, which had been appointed by the will as executor to administer the whole estate, should act in that capacity only as to any part of the estate requiring administration outside of the State of California, a local executor being appointed by the codicil to administer the assets of the testator within that state.

At the time of his death the testator owned certain securities in Maryland, which were in the possession of his sister, Anna C. Uhrig, a resident of Baltimore, and which included some of the stocks and bonds mentioned in his will as having been received by him in the settlement of his father's estate. The value of the entire estate for distri-

bution is $20,081.10. The California assets represent $4,-353.03, and the Maryland assets $15,728.07 of that valuation. The securities in this State which the testator received from the source specified in his will, and bequeathed in trust for the ultimate use of Johns Hopkins University, consist of stocks and bonds valued at $7,150.25, and with them are bonds of the Consolidated Gas Electric Light and Power Company of Baltimore, appraised at $4,650, which the testator acquired, on the company's reorganization, in exchange for shares of its stock which had been delivered to him in the division of the estate of his father.

The Civil Code of California, by section 1313, provides that no devise or bequest to any charitable or benevolent society or corporation, or in trust for charitable uses, shall "exceed one-third of the estate of the testator leaving legal heirs, and in such case a pro rata deduction from such devises and bequests shall be made so as to reduce the aggregate thereof to one-third of such estate * * *" The will from which we have quoted was made by a testator who left legal heirs (a widow, two sisters, a brother and a nephew), and it bequeathed more than one-third of his estate eventually for an object within the purview of the California law just cited. The trust provisions of the will are not in conflict with any law of Maryland. It is provided by the Code of Public General Laws of Maryland (article 93, section 334), that every will or testamentary instrument executed out of this State, in the manner prescribed by the law of the testator's domicile, shall have the same force and effect as if executed in the mode required by the law of this State, provided such will is in writing and subscribed by the testator, and that "if the testator was originally domiciled in Maryland, although at the time of making the will or at the time of his death he may be domiciled elsewhere, the said last will or testamentary instrument so executed shall be admitted to probate in any orphans' court of this State; and when so admitted shall be governed by and construed and interpreted according to the law of Maryland, without regard to the *lex*

*domicillii,* unless the testator shall expressly declare a contrary intention in said will or testamentary instrument.

The testator with whose will we are now concerned was a native of Maryland, but went to California in his early manhood. He died there at the age of sixty-three years. A duly authenticated copy of his will, and of the record of its probate in Los Angeles County, California, was filed in the Orphans' Court of Baltimore City, and letters testamentary thereon were granted by that court to the Safe Deposit and Trust Company as the executor appointed by the will for the administration of the estate of the decedent outside of the state of his last domicile. By suitable proceedings in the Orphans' Court the question was raised as to whether the estate in Maryland, bequeathed in trust for the establishment of a course in eugenics at Johns Hopkins University, should be proportionately reduced in conformity with the California statute, or should be distributed, free of any such restriction, in view of the Maryland Code provision which we have quoted. Another question similarly presented was whether the Consolidated Gas Electric Light and Power Company bonds received by the testator on the reorganization of the company, in lieu of stock which passed to him in the division of his father's estate, were within the description of assets which the will specifically bequeathed for the purposes of the trust. The Orphans' Court decided that the California law controls the distribution, and that the bonds in question are included in the bequest. The Johns Hopkins University has appealed from the decision because of the limitation it imposed upon the value of the trust estate vesting in final remainder, and Augusta L. Uhrig, the testator's widow, has appealed from the order of the court in so far as it treated the Consolidated Gas Electric Light and Power Company bonds as forming part of the trust estate.

The theory that the law of California applies to the distribution in controversy rests upon the fact that the will of the testator was not probated in the Orphans' Court of Baltimore City according to the ordinary method of probate procedure. But the practical purposes of a probate have

been accomplished by the production in that court of a duly authenticated copy of the will, and of the official record of the proof by the attesting witnesses of its execution, as filed in the Superior Court of Los Angeles County, in the State of California. If the will had been probated here in the usual way, it is evident, and not disputed, that the law of Maryland would govern the distribution under the will of the assets which are here being administered. The other conditions under which section 334 of article 93 of the Code applies are shown to exist. It is a fact that the testator was originally domiciled in Maryland, and there is no declaration in the will of a testamentary intention contrary to the application of the Maryland law. Moreover, the testator acquired in this State the property which he has bequeathed in trust, and the ultimate beneficiary is a Maryland institution. There is ample reason to apply the law of our own State to such a bequest of property within its limits, as directed by our Code, unless its provision to that effect must be held inapplicable because the will was proved in the court below by an authenticated record from the jurisdiction of the testator's final domicile and not by the usual method of probate. If this is a correct theory, the question as to whether the law of this State should apply in a case like the present might depend simply upon the discretion of the person in charge of the will as to its original production for probate in a Maryland court. But it is the substance and effect, rather than the form, of the action taken in reference to the proof of the will that must determine the question as to whether the conditions of the Code, relating to the application of the Maryland law, have been fulfilled. The authenticated record of the will and its probate in the jurisdiction of the testator's residence was presented and accepted in the Orphans' Court of Baltimore City, for the purposes of the administration of his local assets, as effectually as if the original will had been admitted to probate upon affidavits procured directly from the attesting witnesses.

Section 351 of article 93 of the Maryland Code provides:

°

"A copy of the record of any will which the laws
of the State or country where the same may be exe-
cuted requires to be recorded or registered, and which
hath been recorded or registered agreeably to such
laws, under the hand of the keeper of such record or
register, and the seal of the court or office in which
such record or register hath been made, * * * shall be
good and sufficient evidence in any court in this State
to prove such will."

By section 354 of the same article it is provided that any
person who may be interested in any devise or bequest of
any property in this State under any will admitted to pro-
bate and recorded in any other state, territory or foreign
country, may procure a copy of such will, with a certificate
of its probate, duly authenticated, "and file the same in the
office of the register of wills of any county in this State or
the City of Baltimore; and thereupon it shall be the duty of
said register to record the same as other wills admitted to
probate in his office," and a copy of such record certified
under the hand and seal of the register "shall be evidence
in all suits and actions to be tried in any court in this State,
or before any justice of the peace, wherein the title to any
property, real or personal, thereby devised or given shall be
in question, with the same force and effect as if the original
will had been admitted to probate in this State, according to
the laws thereof."

It is evident from the provisions just quoted that the
policy of our law is to give full effect to an authenticated
record, from a competent tribunal of another state, duly
evidencing a will, there probated, which disposes of Mary-
land property. In *Dalrymple* v. *Gamble,* 66 Md. 298, this
Court said, upon consideration of the Code provisions last
referred to, that there is "no reason why a foreign will, au-
thenticated according to the statute, should not stand upon
the same footing as a domestic will in the granting of letters,
c. t. a."

In providing for the admission to probate in Maryland of
the will of a testator originally domiciled here, but residing

elsewhere at the time of his death, and for the application of the Maryland law to such a will unless it expresses an intent to the contrary, section 334 of article 93 of the Code makes no reference to the method of accomplishing the probate which it authorizes. Its application is not made by its terms to depend upon the presentation and proof here in the first instance of the will of a former resident. The reasonable construction of the statute, with respect to wills which are first probated elsewhere, and may not be available for original proof here, is that they are intended to be admitted to probate upon such evidence of their execution and verity as the law of Maryland declares to be sufficient for the authentication of wills under such conditions. As thus construed, the statute may fulfill without undue restriction its purpose that, when the jurisdiction of a probate tribunal in this State is invoked and exercised for the administration of local assets under a will made by one of its former inhabitants, the Maryland law shall govern unless the will expresses a contrary intention.

The duly certified record from the Superior Court of Los Angeles County, California, shows the admission to probate there of the will in question upon proof that it was written, dated and signed by the testator, that he executed and acknowledged it in the presence of the three subscribing witnesses, who attested it at his request and in his and each other's presence, and that he was, at the time of its execution, of sound and disposing mind, and was not acting under any duress, fraud or undue influence. Upon original proof of such facts the will would have been admissible to probate in the Orphans' Court. The production and acceptance in that court of the complete proof furnished by the authenticated record from the California court, as a basis for the grant of letters testamentary and for the due administration of the estate, was a sufficient compliance with the provision of the Maryland Code, as to the probate of the will, to bring it under the operation of the law of this State as to property located within its limits.

The question as to the application of the will to assets originating here which were intended to be included in the trust it creates, but which are now in California, is not within the proper scope of our decision, as it is a question for the courts of that state to determine.

The Orphans' Court, we think, correctly decided that the bonds of the Consolidated Gas Electric Light and Power Company, owned by the testator, passed under the bequest in trust of "all the shares of stock, bonds and other securities" received by him from the estate of his father, and which were "specifically described in the agreement of Partition and Division" between the testator and other legatees. It was proved that the bonds just mentioned were issued to the testator in substitution for shares of stock of the same corporation which the agreement for the division of his father's estate had described. This exchange resulted from a re-organization of the company. The bonds received in place of stock previously held were left in this State in the hands of the testator's sister, Anna C. Uhrig, in whose custody the stock certificate had been placed, and who is one of the beneficiaries of the bequest. There is no residuary clause in the will, and there would be intestacy as to the bonds if they were excluded from this legacy. It is hardly to be supposed that the testator intended to produce such a result with respect to these particular securities in the group of those which the will specified. The expressed purpose of the bequest was to vest in the trustee all the securities acquired by the testator from the source he indicated. To that origin his ownership of the bonds in dispute may be attributed. They were not issued to him as the result of a purchase which he originated, but they simply replaced and represented shares of stock received by him under his father's will, and which the corporate re-organization recalled.

The general and familiar rule is that an ademption results from a sale or other disposition, made by a testator in his lifetime, of property specifically devised or bequeathed, and the proceeds cannot be followed, for the purposes of the devise or bequest, into property in which they may have been

reinvested.  *Gardner* v. *McNeal,* 117 Md. 27.  But in this instance the testator did not initiate the change of the investment from the stock to the bonds of the corporation by which both were issued.  It occurred in consequence of corporate action which he could not have controlled.

In 40 Cyc. 1921, upon the authority of cases there cited, it is said:  "A change in the form of a security bequeathed does not necessarily work an ademption.  So there is no ademption where notes bequeathed are renewed, where stock bequeathed is exchanged for notes of the company, where stock in a consolidated corporation is accepted by the testator in lieu of stock in a component corporation which he had bequeathed, or where a state bank, stock in which has been bequeathed, is changed to a national bank."

A note to *Gardner* v. *McNeal, supra,* in 40 L. R. A. (N. S.) 556, refers to the following cases, and others, in which ademption was held not to have occurred:  *Pope* v. *Hinckley,* 209 Mass. 323, where stock in a New Jersey corporation, which had been bequeathed, was surrendered for voting trust certificates to be exchanged for the stock of the corporation as reorganized under the laws of another state; *Re Pierce,* 25 R. I. 34, where bequeathed bank stock was exchanged for stock issued upon the reorganization of the bank and its consolidation with other corporations; *Stout* v. *Hart,* 7 N. J. L. 414, where the testator accepted a bond in lieu of one which was the subject of the bequest; *Skipwith* v. *Cabell,* 19 Gratt. 758, where bequeathed corporate bonds, which had been guaranteed by the state, were exchanged for state bonds as authorized by statute; *Prendergast* v. *Walsh,* 58 N. J. Eq. 149, where a bank account given as a legacy was removed by the testator to a bank other than the one named in the will; *Re Pilkington,* 6 New Reports, 246, where corporate bonds, described in a bequest, were converted into shares of a succeeding corporation pursuant to an agreement made with the bondholders before the will was executed.  There is an annotation in L. R. A. 1918 D, 538, in which other cases relating to this subject are summarized.

Upon the facts shown by the record we are of the opinion that the bonds of the Consolidated Gas Electric Light and Power Company, received by the testator in place of stock issued by that corporation which he acquired from his father's estate, were among the securities which he intended to include in the bequest under discussion.

The securities received by the testator from the estate of his father included fifty shares of National Mechanics' Bank stock. These were converted, during the testator's life, into fifty shares of Merchants' National Bank stock as the result of a change in the name of the bank by which the stock was originally issued. It is clear that such an alteration in the form of the legacy stock did not cause an ademption. This question was mentioned in the proceedings below, but was not pressed on appeal.

There are certain provisions in the order appealed from which need not be reviewed, as they are predicated on the theory, which we have been unable to adopt, that the bequest in trust is governed by the California statute. The order will be reversed in part and the case remanded to the end that such of the Maryland assets as we have found to be within the purview of that bequest may be distributed to the trustee in accordance with its terms.

> *Order affirmed in part and reversed in part and case remanded, the costs to be paid out of the estate in course of administration in the Orphans' Court.*