## Goode, Executor v. Reynolds, Executor.

### (Decided March 13, 1925.)

### Appeal from Franklin Circuit Court.

1. Wills—Legacy of Shares of Stock Held Not Adeemed by Consolidation of .Companies, where Shares of Consolidated Company Issued in Place of Old Shares.—Where testator bequeathed certain shares of stock in two banks, and before testator's death each of said banks consolidated with another, and in each case an equal number of shares of consolidated company were issued,· the stockholders in one case retaining their old stock, with right to liquidating dividends, and in the other also receiving stock in a realty company, held, that there was no ademption, except as to liquidating dividends paid to testator and disposed of by him.

2. Wills—Introductory Clause Considered in Construing Will, Whether Valid or Not.—An introductory clause of a will, denying validity .of will of testator's deceased wife, and renouncing rights thereunder, must be considered in construing such will, whether clause is valid or not.

3. Wills—Will Giving Testator's Stepdaughter Property Received from Wife Held Not to Include Income.—Where testator suppressed deceased wife's will, took control of personal property, and collected income therefrom, and in his will bequeathed to his stepdaughter "all the property which I took from my wife," held, that he thereby intended to bequeath to his stepdaughter only corpus of his wife's estate, and not income thereof.

4. Executors and Administrators—Husband,. who Collected Income from Wife's Property, Held Accountable to Daughter for One-Half Thereof.—Where testator, believing wife's will giving one-half of property to him and other half to an only daughter, to be ineffective, suppressed it, and collected income from whole property, his estate is accountable to daughter for income of one-half of property, to which daughter was entitled, either under will or law of distribution.

5. Executors and Administrators—Burden on Husband, Collecting Income from Wife's Property, to Show Payment to Stepdaughter. —Where husband suppressed wife's will, and collected income from wife's property, burden is on his estate, when called on to account to stepdaughter, to show that she received her share of

*income* by checking on joint bank account, and by husband's payments for her benefit, and, when this is not shown, his estate will be charged with one-half of income received, with interest from average date of collection; Ky. Stats., section 2065, not being controlling.

6. Executors and Administrators—Presumed that Note Executed by Husband and Wife to Pay Husband's Indebtedness was Paid by Husband on Becoming Due, in Absence of Contrary Showing. —Where evidence showed that husband and wife executed a joint note for money borrowed to pay husband's debt, but it was not shown who paid such note, it cannot be said that husband got any property from his wife, within will bequeathing to daughter all property received from wife, as it must be presumed that husband paid note and saved wife harmless.

7. Executors and Administrators—Evidence Held Not to Warrant Inference that Testator Borrowed Money from Wife to Purchase Stock Within Bequest of Property Received from Wife.—Evidence held not to warrant inference that stock was purchased by testator with money borrowed by him from his wife, so as to pass to wife's daughter, under bequest of property received from wife.

8. Husband and Wife—Gift by Husband to Wife Held Valid, where he Ratified and Approved it After Passage of Weisinger Act.— Whether gift by husband to his wife of two mirrors, which came to him through his family, was void or not, prior to passage of Weisinger Act, was immaterial, where he thereafter recognized gift, ratified it, and in effect revested wife with title to it.

9. Executors and Administrators—Executrix Not Entitled to Attorney's Fees, where Attorney's Services Performed for Her Individually.—An executrix was not entitled to attorney's fees, where services of attorney were rendered to advance interest of executrix in her individual capacity, and not representative capacity.

L. F. JOHNSON, HARDIN H. HERR and SHACKELFORD MILLER for appellant.

T. L. EDELEN for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming on the cross-appeal, and affirming and reversing in part on the original appeal.

In December, 1883, Col. L. P. Tarlton married Mrs. Meta Reynolds, who at that time had a daughter, Miss Christine H. Reynolds, one of the appellees herein. This family lived together in affectionate relationship until Mrs. Tarlton died in 1910, and thereafter Col. Tarlton and Miss Reynolds continued to live in the same affectionate relationship until he died in 1916. After Mrs.

Tarlton's death in 1910, there was found by her husband, among her papers, the following holographic will:

"I want my husband, L. P. Tarlton, to have the use of the income of half of what is left that my mother, Jane Westfeldt, left me. The other half I will *in toto* to my daughter Christine Reynolds. I also leave her all other property, personal and otherwise, that I am possessed of. At Mr. Tarlton's death, the portion that I leave him must revert to my daughter, Christine Reynolds. I want my faithful servant, Willie Green, to have one hundred dollars, and hope he will be looked after in his old age. I want each of the servants to have some remembrance of me, as well as my old friend, Mrs. Mollie ——, and also Mrs. Jennie Tracy.

"M. W. TARLTON,
Aug. 9, 1908."

Col. Tarlton never probated this will, and in fact suppressed it, as he thought he had a right to do. After Col. Tarlton's death, Mrs. Tarlton's will and his will were both probated. Col. Tarlton's will reads as follows:

"I, L. P. Tarlton, of Franklin county, Ky., do make this my last will, hereby revoking any and all others by me heretofore made. I renounce taking under the papers found loose in my late wife's desk, dated Oct. 1, 1907, because I know if she knew of the existence of the paper, she did not intend it for her will or believe that it was a legally executed will, and had frequently in the past few months said she had made no will, but, perfectly satisfactory to me, would leave the distribution of her property as by law provided.

"First: All the property which I took from my wife I will, give and bequeath to our daughter, also four (4) shares of my eighteen (18) shares in the stock of the Farmers' Bank of Frankfort, and the five (5) shares of stock in the Third National Bank of Lexington; no part of the property in this item shall be liable for any debt or claim against my estate unless all my other property shall have been first exhausted.

"Second: I wish all my just debts and funeral expenses promptly paid.

"Third: I wish the ten (10) shares of my stock in the Farmers' Bank of Frankfort set aside for the permanent endowment of a Meta Westfeldt Tarlton room in the King's Daughters' Hospital in Frankfort, or some other Christian charity as Christine shall decide. If this is not sufficient, I would ask her to add to it from the property in the first item as would make the endowment what she thinks fitting and adequate.

"Fourth: All my other property situated in Fayette county, my farm Stockland, which I inherited from my mother and grandmother, I will and bequeath to my niece, Josephine Tarlton Goode. This property I charge not only with mortgages upon it, but also with any other just claims or debts, if any should be established against my estate. Provided that the lot of land which I own on Fourth avenue near the race track in Louisville shall be first exhausted to pay $1,250.00 due Mrs. Reid and $500.00, and the Clays' $750.00 and $1,000.00, which is left in my hands for distribution as administrator of my grandmother after the last old negro (Eli) died. This would have been done before this, but for my dear wife's long illness.

"Signed this 18th day of June, 1910, and written in my own hand. I name Christine H. Reynolds and Denny B. Goode as executors without bond of this will.

"L. P. TARLTON."

This action was brought by one of Col. Tarlton's personal representatives for a construction of his will, and in this action numerous questions were raised by the parties thereto. The judgment of the lower court comprises twenty-seven separate findings, of which we will consider only those as are complained of in this court on the appeal and cross-appeal taken from that judgment.

The first question which is presented concerns the bequests of the stock in the Farmers' Bank of Frankfort and the Third National Bank of Lexington to Miss Reynolds and the King's Daughters' Hospital. After Col. Tarlton's will was executed but before his death, the Farmers' Bank mentioned in his will consolidated with the Deposit Bank of Frankfort, the combined institutions being known thereafter and at the time of Col. Tarlton's death as the Farmers'-Deposit Bank. In the consolida-

tion, the stockholders of the old Farmers' Bank were given an equal number of shares in the consolidated organization. They were likewise allowed to retain their certificates in the old company, which in the consolidation reserved certain assets to be liquidated and distributed among its old stockholders. It appears that during Col. Tarlton's life there was paid as a liquidating dividend on these old certificates $120.00 per share, and that there will be still further liquidating dividends to come although they will not exceed probably $30.00 per share. At the time of his death, Col. Tarlton had on hand the old certificates and the certificates in the consolidated company but had disposed of the cash liquidating dividends. With regard to the Third National Bank of Lexington, after Col. Tarlton wrote his will and before his death, it consolidated with the Phoenix National Bank of Lexington, and in the consolidation Col. Tarlton was issued for the five shares of stock he then owned in the old Third National Bank, five shares of stock in the consolidated bank, and also five shares of stock in a realty company organized to take over certain real estate holdings owned by the old Third National Bank and which did not go into the consolidation. The appellant claims with reference to these bank stocks that the change in the character of the securities worked an ademption of the legacies and that Miss Reynolds is not entitled to take anything under these bequests in the will. On the other hand, Miss Reynolds claims there was no ademption and she is entitled not only to the stock in the consolidated corporations but also, in the case of the Farmers' Bank, to the old certificates which carry with it future liquidating dividends, and the liquidating dividends paid Col. Tarlton, and further in the case of the Lexington bank, to the five shares of stock in the realty corporation.

Regarding this matter of ademption, one theory is that the ademption of specific legacies depends upon intent. The other theory is that whenever the specific thing devised has ceased to belong to the testator the bequest is adeemed. Despite this, however, it is held that a legacy is not adeemed if the alteration be purely formal. Such is the case where there is a mere subdivision of a company's shares. In re Greenberry, 55 Sol. J. 633. And this principle has been extended to cover the substitution of shares in a consolidated company for shares in an old company. Thus in Re Clifford's Estate, 56 Sol. J. 91, we find that a testator bequeathed 23 shares which he

owned in the London and County Bank Company. Before his death that company consolidated with another, the new company going under a different name and having enlarged capital. Each shareholder of the old company received four shares in the new. The court held that the bequest passed 92 of the new shares. To the same effect is In Re Leeming (1912), 1 C. H. (Eng.) 828. In Pruyn v. Sears, 161 N. Y. Supp. 58, the testator bequeathed 30 shares of the S. & P. corporation, which did business at Rome and Watertown. Later all the assets of this corporation were transferred to a new corporation known as S. & P., Inc., which did business only at Watertown. The stockholders of the old company received shares in the new company for their old stock. The court held that the new shares passed under the bequest and that the same was not adeemed. In Ford v. Ford, 23 N. H. 212, the court held that a renewal of notes by less than all of the original signers did not adeem a specific legacy of the original notes.

In Pope v. Hinckley, 209 Mass. 323, it was held that where stock in a New Jersey corporation was bequeathed and later this company became defunct, whereupon a Connecticut company was organized to take over the assets of the New Jersey company, pending which transfer the stock in the old company was surrendered for voting certificates to be later exchanged for the Connecticut stock, and then the testator died, the legacy was not adeemed and the legatees were entitled to the voting certificates in lieu of the New Jersey stock.

In Re Thomas Peirce, 25 R. I. 34, stock in a consolidated bank and a small cash payment were given for stock in one of the consolidating banks. It was held that a legacy of stock in such consolidating bank was not adeemed by the exchange.

To the same effect are Spinney v. Eaton, 111 Me. 1; Hill's Admr. v. Hill, 103 S. E. 605 (Va.) See also 28 R. C. L. 341.

In 40 Cyc. 1921, we find:

"A change in the form of a security bequeathed does not necessarily work an ademption. So there is no ademption where notes bequeathed are renewed, where stock bequeathed is exchanged for notes of the company, where stock in a consolidated corporation is accepted by testator in lieu of stock

in a component corporation which he had bequeathed or where a state bank, stock in which has been bequeathed, is changed to a national bank.''

We believe the rule laid down by these authorities to be the correct one. The likeness of the new shares to the old is more important than their differences. Applying this rule, we think it plain that Miss Reynolds is entitled to the securities given in the consolidation for the securities surrendered. Hence the lower court correctly adjudged her the five shares of stock in the new Lexington bank and the five shares of stock in the realty company. It also correctly adjudged her and the King's Daughters' Hospital the shares of stock in the Farmers' Deposit Bank and also the certificates in the old Farmers' Bank on which future liquidating dividends are to be paid; but it erred in giving to them the liquidating dividends which were paid to Col. Tarlton in his lifetime, since he disposed of these himself and they are no longer in existence. To this extent at least an ademption was worked.

## II.

Col. Tarlton's will bequeaths to Miss Reynolds in addition to the bank stock hereinbefore discussed ''all the property which I took from my wife.'' When Col. Tarlton suppressed his wife's will, he took possession of her personal estate, composed largely of interest-bearing securities. From that date until his own death he collected the income from these securities and deposited it in his bank account on which, however, Miss Reynolds had the right to draw, which right she freely exercised. The amount of dividends and interest thus collected by Col. Tarlton was $6,993.00. After Col. Tarlton's death, the principal of these securities was turned over to Miss Reynolds, but she is contending that under his will she is also entitled to all the income so collected by him as it was property which ''he took'' from his wife. The lower court so adjudged. Under Mrs. Tarlton's will, Col. Tarlton got only the use of one-half of this part of his wife's estate. Had she died intestate he would have gotten one-half of all of her personal estate absolutely. Undoubtedly Col. Tarlton labored under the impression that he had a right to suppress his wife's will, and that by reason of his suppression she died intestate. No matter how erroneous this belief was on his part, yet that was the idea he had when he came to draft his own will.

Whether the introductory clause of Col. Tarlton's will be valid or not, it must be considered in construing that will. In Sevier v. Woodson, 205 Mo. 202, the court said:

"The valid and invalid portions must be alike considered, and this for the reason that the presumption must be indulged that the testator in formulating the scheme of disposition thought all portions legal and valid."

See also Tilden v. Green, 130 N. Y. 29. We believe that Col. Tarlton's will, fairly interpreted, means that he bequeathed to Miss Reynolds the corpus of the estate which he inherited or took from his wife and that he did not intend to bequeath to her the income or use of that estate. He, of course, knew that he had himself disposed of this income during his own life. If he intended it to pass to Miss Reynolds, then he must have also intended to saddle the payment of it upon his niece, Mrs. Goode, who is not only his specific legatee and devisee but also his only heir and distributee at law, and hence only residuary legatee and devisee. The scheme and framework of his will repells this idea. To the extent of his interest in the income from Mrs. Tarlton's securities, which was one-half, will or no will on her part, his estate is not accountable to Miss Reynolds. For the other half, however, his estate is accountable, since it did not pass to Col. Tarlton either by virtue of his wife's will or of the law of descent and distribution if she died intestate. He had no right to collect and keep this half which belonged to Miss Reynolds under her mother's will, if she died testate, or under the law of distribution if Mrs. Tarlton died without a will. Although Miss Reynolds did not treat her right in this connection in the lower court as a claim in debt against Col. Tarlton's estate, yet as the same result would have been reached had it been so treated, we will not reverse the case on the point of the technical way in which her right was asserted, especially in view of the fact that appellant, as shown by his brief, did consider it as an asserted accounting against Col. Tarlton's estate and so practiced the case. Appellant, although perforce compelled to admit Miss Reynolds' right to one-half of the income collected by Col. Tarlton, insists that the evidence shows she received this income in his lifetime. The evidence does show that she had a right to check on the bank account in which this income was deposited and that she freely exercised

this right, and it also shows that Col. Tarlton made large payments from this bank account for repairs, insurance, taxes and apportionment warrants on certain real estate owned by Miss Reynolds. But the proof also discloses that after Mrs. Tarlton's death, Col. Tarlton continued to run and manage a large farm owned by her from which he realized large sums each year. These sums belonging to him and Miss Reynolds were also deposited in that bank account, and it is impossible for us to say on the proof before us that the payments Col. Tarlton made for Miss Reynolds and the amounts she checked out from this bank account exceeded the income from the farm. Appellant's contention in this regard is in the nature of a plea in payment, and the burden being on him to establish this plea, we cannot say that he has sustained it.

As the lower court awarded to Miss Reynolds the whole income collected by Col. Tarlton, its judgment on this branch of the case will have to be reversed with instructions to enter judgment in favor of Miss Reynolds for one-half of that income, with interest from April 17, 1913, until paid. This interest is so awarded because this claim is in the nature of a debt due by Col. Tarlton and is not a legacy, in which case the matter of interest would be governed by section 2065 of the Kentucky Statutes. The date selected represents the average date of the period over which Col. Tarlton collected that part of the income due Miss Reynolds.

### III.

It is also claimed by Miss Reynolds that any property Col. Tarlton got from his wife over the long period of their married life passed to her by his will. Although we regard this construction as highly strained, yet expressly without passing upon it, we may say that the proof fails to establish that Col. Tarlton got from his wife the property to obtain which Miss Reynolds invokes the construction claimed. The items which Miss Reynolds claims on this appeal are, first, the sum of $3,850.00 borrowed, as is alleged, by Mrs. Tarlton from the Deposit Bank in Frankfort to enable Col. Tarlton to pay off a like amount owed by him to a Lexington bank; and secondly, the sum of $2,950.00 which it is claimed Col. Tarlton got from his wife and invested in certain stocks, among which were the Farmers' Bank stock above mentioned. The evidence does show that in 1897 Col.

Tarlton was being hard pressed by the Third National Bank of Lexington to pay an indebtedness owed by him amounting to $3,850.00, and the evidence also shows that contemporaneous with this, Col. and Mrs. Tarlton executed three notes to the Deposit Bank of Frankfort aggregating $3,850.00. It may, no doubt, be fairly inferred that the money thus secured was used to pay Col. Tarlton's debt, but the record is absolutely silent as to who paid the notes thus executed to the Deposit Bank at Frankfort. Col. Tarlton got no property from Mrs. Tarlton simply because she executed the notes as a joint maker with him. As between her and him, it being his debt, the presumption must be indulged that he paid it when it fell due and saved her harmless, at least in the absence of some showing on the part of Miss Reynolds that her mother paid these notes when they fell due. We cannot say from the meager testimony before us, the benefit of every inference of which we have given to Miss Reynolds, that there is any showing that Col. Tarlton got any property on this score from his wife.

So far as the item of $2,950.00 is concerned, Miss Reynolds bases her claim on some entries in a little book written in Col. Tarlton's handwriting. On the left-hand page appear certain cash entries, probably indicating receipts of money belonging to Mrs. Tarlton and inherited by her from her mother. On the right-hand page appear some entries probably indicating the purchase of some stocks. The right and the left hand pages do not balance, nor can we tell from the date of the entries whether or not they refer even to the same years. One of the stock entries is "four shares of Joliet and Chicago Railroad stock." This stock is proved beyond a preadventure of a doubt to have been inherited by Col. Tarlton from his family. This destroys any inference that this page represents any inventory of stock bought by Col. Tarlton out of his wife's money, and coupled with the fact that Col. Tarlton in his will refers to the Farmers' Bank stock, also an entry on this right-hand page in the little book, as *his* stock and separates it from the bequest of the property he describes as that taken from his wife, demonstrates to our mind that the cash receipts on the left-hand page bear no relationship to the inventory of stock on the right-hand page. Therefore the proof fails to fasten upon Col. Tarlton or his estate this item of $2,950.00.

Inasmuch as the lower court did not allow Miss Reynolds anything on these two items, its judgment in this regard is correct and is affirmed.

## IV.

Appellant complains of that part of the judgment which awarded to Miss Reynolds two large mirrors which originally came to Col. Tarlton through his family. The evidence proves that years ago Col. Tarlton gave these mirrors to Mrs. Tarlton and continued to recognize this gift as long as she lived, and of course long after the Weisinger act went into effect. So whether or not this gift was void prior to the passage of that act, Col. Tarlton thereafter recognized it, ratified it, approved it, and in effect revested Mrs. Tarlton with the title to it. The judgment of the lower court in this connection is correct.

## V.

Lastly, appellant complains of an allowance made to the appellee, Judge T. L. Edelen, in the sum of $500.00 for services rendered in this case to Miss Christine Reynolds, one of the co-personal representatives of Col. Tarlton's will. A like amount was awarded to Mr. Johnson, attorney for the other personal representative, the appellant, Denny B. Goode, but no complaint is made as to it. So far as Judge Edelen's allowance is concerned, the record shows that all his efforts in this case were exerted to advance the interests of Miss Christine Reynolds individually. This being true, the matter is governed by the principle laid down in Shields, et al. v. Shields, et al., 192 Ky. 555, 234 S. W. 7, to the effect that where the services of the attorney are rendered to advance the interest of the executor in his individual capacity and not in his representative capacity and to obtain a construction of the will favorable to the executor in his individual character, the executor should not be allowed a fee for his attorney on account of such services so rendered. Although the record is in the condition we have described, it is stated in brief by Judge Edelen that he has rendered to the estate of Col. Tarlton and to his executors extensive services by way of adjusting inheritance taxes due, advice given in the administration of the estate, aid rendered co-counsel in the effort to redeem certain property of Col. Tarlton sold

for taxes and the like, and it was for these services that the allowance above mentioned was made him. Of course, Judge Edelen is entitled to a fee to be paid by the estate for any services rendered by him to the estate, but we cannot say from this record that the allowance made was for such services. The only service that appears is the service rendered Miss Reynolds individually, as we have above pointed out. Hence on the record as it stands, the judgment in so far as it makes the allowance of $500 to Judge Edelen must be reversed, without prejudice, however, to his right to make claim for an allowance for any services he may have rendered the estate in the final settlement thereof reserved to the parties by the last clause of the judgment.

This disposes of the various contentions made by the parties on this appeal.

On the cross-appeal, the judgment is affirmed. On the original appeal it is affirmed in part and reversed in part as herein indicated, with instructions to enter a judgment on that part reversed in conformity with the views herein set out.