ALFRED A. CURTIS and EQUITABLE TRUST COMPANY, a corporation of the State of Delaware, Executors of Sarah Adela Curtis, deceased,

*vs.*

ALFRED A. CURTIS, EQUITABLE TRUST COMPANY, a corporation of the State of Delaware, Trustee for Dorothy Curtis Storrs, Sarah Curtis McCoy, Alfred A. Curtis, II, and Frederick Lindsey Curtis, Jr., under the will of Sarah Adela Curtis, deceased, the said EQUITABLE TRUST COMPANY, Guardian of Alfred A. Curtis, II, and Frederick Lindsey Curtis, Jr., minors, and the said Dorothy Curtis Storrs, Sarah Curtis McCoy, Alfred A. Curtis, II, and Frederick Lindsey Curtis, Jr., *Cestuis qua Trustent.*

*New Castle, July* 19, 1938.

*Benjamin N. Brown,* for complainant.

*William Prickett,* for Alfred A. Curtis.

*Edward W. Cooch,* for Equitable Trust Co., Trustee and Guardian.

THE CHANCELLOR: First, with respect to the $3,700 of Curtis Paper Company notes, the solicitors for Alfred A. Curtis, the legatee named in the seventh item of the will, concedes that his client can make no claim thereto. The concession appears to be entirely justified. The notes are properly to be regarded as having been accepted by the testatrix in full satisfaction of the overdue interest as cash would have been. Had the testatrix been paid $3,700 in cash, certainly the legatee of the bonds could lay no claim to it. No more can he claim the notes. The executors should, therefore, treat the notes as a part of the residue.

Second. The important question in the case relates to the Curtis Paper Company bonds. What the testatrix bequeathed to her husband was all of the bonds of Curtis and Brother Company which she held, the same being $37,000 in amount. When she died, however, she possessed

no bonds bearing the name of that company as the obligor. But she did possess a like amount of bonds of Curtis Paper Company which she had received in exchange for the Curtis and Brother Company bonds under the circumstances recited in the statement of facts preceding this opinion. Those circumstances show that the bonds she possessed, regarding them as securities for the payment of money, were in every substantial respect the same securities as she had when she executed the will. The only difference was in the identity of the obligor. But that is a difference which in essence is purely artificial. The new company was the same as the old, except as the law attributes different personalities to the artificial entities of its creation. If it had been practical to accomplish the so-called reorganization by retaining the old company's corporate existence and then changing its name by proper amendment to Curtis Paper Company, we would have in every substantial respect exactly what we have now. The business is the same, being but picked up by the new company at the moment of its relinquishment by the old and thence carried forward in unbroken continuity. The bonds received by the testatrix in exchange for the old ones are identical in security, maturity and rate. Viewed as a security, how can it be said that the bonds the testatrix possessed at her death were in any material respect different from those she possessed when her will was written?

The question is, then, does the rather unimportant circumstance of a difference in name of the obligor serve to work an ademption of the legacy bequeathed to the husband of the testatrix?

Ademption is a word of varied meaning. I use it here, quoting from 2 *Page on Wills*, § 1325, "to indicate the loss of a legacy by the loss or destruction of the subject-matter in the lifetime of the testator, or by the loss, transfer or termination of the testator's interest therein before his death."

Whether an ademption has taken place is said by some authorities to be a question of the testator's intention and by others to be simply a question of whether the testator possessed at his death the thing which by his will he had given. This court, speaking through the late Chief Justice Pennewill in a case which was certified to him on the personal disqualification of the Chancellor (*Wolcott, Executor, v. Shaw, et al.*, 21 *Del. Ch.* 1, 2 *A.* 2d 913), in speaking of an ademption said:

> "I have found no exception to the rule that where the subject matter of a specific devise of real estate has been finally disposed of by the testator in his lifetime by sale thereof, the disposition revokes and nullifies the devise, and there is nothing left upon which the devise can operate."

After citing authorities in which devises of real estate were involved he proceeded to cite authorities dealing with dispositions of personal property, since, he said, "the same rule applies to legacies." He then proceeded, as follows:

> "The application of the rule is in no wise dependent upon what might seem to have been the intention of the testator. The theory of the law is, that the intention to revoke the devise is expressed by the absolute disposition by the testator in his lifetime of the subject matter of the devise."

The case before the Chief Justice was one where the testatrix made a specific devise of real estate owned by her at the date of the will, but which she had sold before her death, taking a purchase money mortgage, which she held at the time of her death, for a portion of the purchase price. He held that the devise had been adeemed and that the mortgage fell into the residue. This evidently was because the subject matter of the devise had become obliterated so far as the testatrix' interests therein were concerned and the purchase money mortgage was so different therefrom that it could not be regarded as the same and as standing in place thereof.

It is obvious that no comparable difference in identity can be asserted to exist here between the bonds bequeathed

by the testatrix to her husband and those received by her in exchange therefor and held at her death.

If the alteration in the subject matter of the legacy be purely formal, no ademption is worked. The test which the courts apply is the test of substantial identity. Though the test may be found from an examination of the authorities to be productive of different results when applied to some species of property, yet with respect to corporate stocks and bonds courts are practically unanimous in holding that a legacy of such securities is not adeemed by the circumstance that the bequeathed securities were exchanged by the testator for other securities which he held at death, if the only difference between the two is one in name and form only. *In re Bradley's Estate,* 119 *Misc.* 2, 194 *N. Y. S.* 888; *Skipwith, et al., v. Cabell's Ex'r., et al.,* 19 *Grat.,* (*Va.*) 758; *Spinney v. Eaton, et al.,* 111 *Me.* 1, 87 *A.* 378, 46 *L. R. A., N. S.,* 535; *In re Peirce,* 25 *R. I.* 34, 54 *A.* 588; *Johns Hopkins University v. Uhrig,* 145 *Md.* 114, 125 *A.* 606; *Goode v. Reynolds,* 208 *Ky.* 441, 271 *S. W.* 600, 63 *A. L. R.* 631; *In re Leeming,* [1912] 1 *Ch.* 828; *Oakes v. Oakes,* 9 *Hare* 666, 68 *Eng. Reprint* 680, disapproved on another point in *Morrice v. Aylmer,* [1874-1875] *Ch. App.* 148.

In some of the foregoing cases the courts extended the application of the rule to more extreme factual situations than we find in the instant case. For instance, in the case of *Skipwith, et al., v. Cabell's Ex'r., et al., supra,* the bonds bequeathed were corporate bonds guaranteed by the State of Virginia while the bonds received in exchange were the sole obligation of the State; and in *Goode v. Reynolds, supra,* the bank stock bequeathed had been exchanged by the testator for stock in another bank with which the first became consolidated. In cases of this type it could be argued with more force than here that the new security was different in point of substance from the old, because the underlying assets were different. But the rule was

nevertheless applied. The fact situation in the English case of *Slater v. Slater,* [1907] 1 *Ch. Div.* 665, relied on by the solicitor for the trustee of the residue, makes it somewhat similar in principle to *Goode v. Reynolds, supra.* The Chancery Division, however, concluded, contrary to the conclusion of the Supreme Court of Kentucky in *Goode v. Reynolds, supra,* that the securities had been so altered in particulars of substance that the legacy was adeemed. It is to be observed, however, that Cozens-Hardy, M. R., in delivering his judgment in *Slater v. Slater,* appeared to agree with the statement of Turner, V. C., in *Oakes v. Oakes, supra,* that where the change is "in name and form only \* \* \* yet substantially the same thing," there is no ademption. So also in *Horn's Estate,* 317 *Pa.* 49, 175 *A.* 414, 97 *A. L. R.* 1029, cited by the solicitor for the trustee of the residue, where stock bequeathed was in a corporation which merged with another into a consolidated company and as a result thereof the testator received a different number of shares of stock of different classes in two different companies, in exchange for the shares bequeathed. Though the Supreme Court of Pennsylvania, following *Slater v. Slater, supra,* held there was an ademption due to the substantive change in the investment, yet it is clearly inferable from the opinion, as it was expressly stated in *Slater v. Slater, supra,* that if the change had not been one of substance but only one in name and form, the legacy would not have been adeemed. The cases relied on by the solicitor for the trustee, therefore, recognize that when the change in the investment is concerned only with name and form, there is no ademption.

Those courts which treat the question of ademption as one of testamentary intent, appear to lay stress upon whether the testator had of his own free choice and will originated the idea of acquiring the new security. If so they deduce from that circumstance the equivalent of an intent on his part to sell the old one and acquire the new.

When that is so, the result would naturally follow that the testator had exhibited an intent to dispose of the bequeathed property and the legacy was therefore adeemed. But even in those cases it will be noted that if the new security was thrust so to speak upon the testator by anything like reorganization proceedings, since in such case it could not be said that the testator had parted with the subject of the legacy in the sense of a voluntary sale of it, no evidence of an intent to adeem is regarded as shown, if there is identity in every particular of substance between what was bequeathed and what was received in exchange therefor. *Johns Hopkins University v. Uhrig, supra; In re Peirce, supra; Morse v. Converse,* 80 *N. H.* 24, 113 *A.* 214; *Chase National Bank, et al., v. Deichmiller, et al.,* 107 *N. J. Eq.* 379, 152 *A.* 697; in all of which it was found that no ademption had taken place. Language will be found in those cases which stresses the fact that the testator had not himself originated the idea of acquiring the new securities in place of the old ones which he had bequeathed. The stress in this regard is for the purpose of negativing the idea of a voluntary sale and disposition of the legacy by the testator, which is often stated as one of the occurrences out of which ademption arises. The conception that what the testator did was voluntarily to sell the subject of the legacy and purchase something else not exactly the same though closely similar, explains *Beck v. McGillis,* 9 *Barb.* (*N. Y.*) 35, *and Tolman v. Tolman, et al.,* 85 *Me.* 317, 27 *A.* 184, cited by the solicitor for the trustee.

In the case at bar, however, there is no room to contend that the testatrix did anything that was the equivalent of a voluntary disposition of the bonds which were the subject of the legacy. All that occurred was that as a result of the so-called reorganization she possessed the same investment as she had when her will was executed, different from the old only in a few immaterial circumstances. The decided weight of authority both American

and English is to the effect that no ademption arises under circumstances of that character.

Decree in accordance with the foregoing.