IN THE MATTER OF THE ESTATE OF WILLIAM K. DUNGAN.

*Orphans' Court, New Castle, November 26, 1948.*

LAYTON, J., sitting.

*Henry Van der Goes,* for executor.

*William Poole,* for trustee.

*George T. Coulson,* for claimant.

LAYTON, Judge:

The codicil established a specific, not a general, legacy. While cases may be found to the contrary, in my judgment the intention to devise certain designated articles, to sever them from his estate, is clearly apparent from the language employed by the testator. In the light of Item 3 of the will, revoked by the codicil, this intention is even more clear. Item 3 was plainly a general legacy, an intention that Mrs. Snyder receive a certain named portion of the estate. The codicil, on the other hand, specifies the exact property, separates it from the estate, and bequeaths it to Mrs. Snyder. Vol. 4, *Page on Wills*, (*Lifetime Edition*) *Sec.* 1394.

Nor is there any doubt in my mind that the exchange of the municipal bonds of Atlantic City for those of the Borough of Lodi, forced upon testator by the call of the former though it may have been, resulted in an ademption. The result is harsh, but the rule in Delaware is clear and implacable. Only where the exchange of securities is purely formal in character, as in *Curtis v. Curtis*, 23 *Del. Ch.* 27, 2 *A.* 2*d* 88, 91, can the consequences of the rule be avoided. In that case, testatrix owned bonds of the Curtis and Brother Company. She devised them to her husband. Through a reorganization whereby the assets of the old, were purchased by a newly created, corporation, each bondholder received bonds of the new company in all respects similar to his former holdings in the old. After the reorganization, testatrix died. Chancellor Wolcott concluded that there was no ademption under such facts:

"If the alteration in the subject matter of the legacy be purely formal, no ademption is worked. The test which the courts apply is the test of substantial identity. Though the test may be found from an examination of the authorities to be productive of different results when applied to some species of property, yet with respect to corporate stocks and bonds courts are practically unanimous in holding that a legacy of such securities is not adeemed by the circumstance that the bequeathed securities were exchanged by the testator for other securities which he held at death, if the only difference between the two is one in name and form only."

But the implication is quite clear that, had there not been a substantial identity between the new and the old bonds, an ademption would have resulted regardless of the fact that the exchange was forced upon testatrix by a reorganization. Moreover, Chancellor Wolcott expressly approved the rule laid down in *Wolcott v. Shaw*, 21 *Del. Ch.* 1, 2 *A. 2d* 913, 915, where Chief Justice Pennewill, sitting as Chancellor, stated in this same connection:

"I have found no exception to the rule that where the subject matter of a specific devise of real estate has been finally disposed of by the testator in his lifetime by sale thereof, the disposition revokes and nullifies the devise, and there is nothing left upon which the devise can operate. As some courts say, the subject matter has been annihilated. There can be no reason to elaborate the point, because there is nothing to discuss. The authorities seem to be in accord on the subject, and I will mention only some of them. (Cases cited.)

"Since the same rule applies to legacies the following authorities may be added: (Cases cited.)

"The application of the rule is in no wise dependent upon what might seem to have been the intention of the testator. The theory of the law is, that the intention to revoke the devise is expressed by the absolute disposition by the testator in his lifetime of the subject matter of the devise."

In the case before me there is no similarity whatsoever between the bonds in question except to the extent that they both represented obligations of municipalities in the State of New Jersey in approximately identical amounts. By no stretch of the imagination could this case come within the exception to the general rule laid down by Chancellor Wolcott in the *Curtis* case. In Delaware, it is not the intention of the testator, but the alienation of the thing devised, which controls the result. *Wolcott v. Shaw, supra.* Aside from the letter and notation on the envelope, neither of which documents I have considered here, it is reasonably clear that the testator intended the Borough of Lodi bonds to replace those of the City of Atlantic City. I have little doubt of that. But as said in *Harrison v. Jackson*, 7 *Ch.Div.* 339:

"If I were allowed to guess what was the intention of the testator in this case, and in other cases where specific bequests have been held to be adeemed, I should say that the doctrine of ademption very often defeats the intention. But the law is, that the specific legacy is adeemed when the subject of it has been aliened by the testator in his lifetime."

It follows that the legacy under consideration is not only specific but, to the extent of the bonds of the Borough of Lodi, must be held to have been adeemed.