IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| In the Matter of the Estate of | § | |
| EDWARD J. BURKE | § | |
| | § | No. 48, 2017 |
| KEVIN BURKE, | § | |
| | § | Court Below: |
| Plaintiff Below, | § | |
| Appellant, | § | Court of Chancery |
| | § | of the State of Delaware |
| v. | § | |
| | § | C.A. No. 10768 |
| MILDRED BURKE, | § | |
| | § | |
| Defendant Below, | § | |
| Appellee. | § | |

Submitted: August 23, 2017
Decided: August 24, 2017

Before **STRINE**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

## **O R D E R**

This 24th day of August 2017, upon consideration of the briefs and record on appeal, it appears to the Court that:

(1)    This appeal concerns a dispute between Kevin Burke ("Kevin") and his stepmother, Mildred Burke ("Mildred"), over the estate of Edward J. Burke ("Burke"), who was Kevin's father and Mildred's husband.[1]    In commencing this action, Kevin alleged that, prior to Burke's death, Mildred improperly used a power of attorney to retitle one of Burke's bank accounts, which held the proceeds from Burke's sale of a property that was the subject of a specific devise in his will.    The Court of Chancery granted summary judgment in Mildred's favor, holding that Burke's sale of the property

---

[1] We refer to the parties by their first names to avoid confusion.  No disrespect is intended.

resulted in an ademption of the specific bequest thereof and that trial would be "useless" because any recovery would flow to Mildred as the sole beneficiary of Burke's estate. On appeal, Kevin challenges these conclusions and the Master's determination that he lacked standing. Because we agree with the Vice Chancellor's bench ruling and his conclusion that a trial in this matter would be futile, we do not reach the Master's conclusions with respect to standing.

(2)    On March 17, 1998, Burke executed a durable power of attorney naming Mildred as his attorney-in-fact (the "POA").[2]  Burke also executed a Last Will and Testament (the "Will"), which named Mildred executor of Burke's estate and trustee of a trust created in the Will (the "Trust").[3]  The only asset devised to the Trust was real property titled solely in Burke's name (the "Property").  The Will provided:

> BENEFICIARIES:  I hereby give my home and it[s] contents located at 2225 Grundy Road, Woodbridge, Virginia to my Trustee herein named. The Trustee shall allow my daughter, Julia Ann Bibbee[,] to live in this home for three years after my death.  My daughter shall be responsible for the payment of taxes, maintenance and insurance during this time period. After three years have lapsed I direct my Trustee to sell this house and invest the net proceeds and to give the contents of the house to Julia Ann Bibbee.  I direct the Trustee to pay the net income to Mildred Burke for her life.  Upon the death of Mildred Burke the corpus shall be distributed equally to my four children:  Julia Ann Bibbee, Edward J. Burke, Jr., Kevin T. Burke, and Elizabeth S. Frey. In the event any of my children have predeceased me then I give that child's share to his or her issue per stirpes.
>
> I give the rest and remainder of my estate to my wife, Mildred G. Burke.[4]

---

[2] *See* App. to Opening Br. at A122-23 (Durable Power of Attorney).

[3] *Id.* at A81-85 (Last Will and Testament).

[4] *Id.* at A82.

(3)     On July 24, 2012, Burke sold the Property and deposited the proceeds in an account titled solely in his name.[5]  After the sale, Burke's health began to decline.  In January 2013, he underwent quadruple bypass surgery, and Mildred began using the POA to retitle his bank accounts in both their names, including the account that held the sale proceeds.  Burke passed away on October 10, 2013.

(4)     On March 10, 2015, Kevin initiated this action, alleging that Mildred breached fiduciary duties she owed to Burke as his attorney-in-fact.  He asserted that Burke segregated the sale proceeds to preserve them for his children and that Mildred improperly used the POA to defeat Burke's testamentary intent.  The complaint sought invalidation of these transactions, an accounting pursuant to the Delaware Durable Personal Powers of Attorney Act,[6] and imposition of a constructive trust.  Mildred filed a motion to dismiss,[7] arguing that the devise of the Property lapsed when Burke sold it, such that Kevin had no interest in the sale proceeds and therefore lacked standing.  The Master recommended that the Court of Chancery grant summary judgment in favor of Mildred, reasoning that Burke's sale of the Property reflected his intention to revoke the devise thereof.[8]  The Master concluded that Kevin was not entitled to the proceeds of the

---

[5] App. to Answering Br. at B6-7 (Deed); App. to Opening Br. at A98 (Aff. of Mildred at ¶ 4).

[6] *See* 12 *Del. C.* § 49A-101 *et seq.*

[7] The motion was untimely, and the Master treated it as a motion for summary judgment pursuant to Court of Chancery Rule 56(b). *In re Edward J. Burke Estate* (*Burke I*), 2016 WL 4217752, at *2 (Del. Ch. Aug. 10, 2016), *exceptions denied sub nom. In re Burke* (*Burke II*), 2017 WL 228275 (Del. Ch. Jan. 18, 2017).

[8] *Id.* at *4.

sale and therefore lacked standing to challenge Mildred's treatment of the account holding those funds.[9]

(5) Upon review of Kevin's exceptions to the Master's Final Report, the Vice Chancellor agreed that the specific devise of the Property "was adeemed at the time that [P]roperty was sold."[10] He did not reach the Master's standing analysis, stating:

> That is an interesting question, but to my mind, it doesn't dictate the result here, because, as I pointed out earlier, equity will not require the doing of a useless thing. If there were breaches of fiduciary duty in the conduct of the attorney in fact in pulling money out of accounts prematurely, putting them in her own name, or whatever happened, if I were to so find, I would order those amounts, I suppose, put back in the estate. They would flow through the residuary clause of the estate to the beneficiary, who, it happens, is the former attorney in fact.
>
> So it seems to me that if this went forward to a trial, one of two things would happen. Either the holder of the power would be vindicated, in which case there would be no recovery by the estate, or the exceptants would be vindicated, money would be ordered put back in the estate, and it would flow through the residuary clause.
>
> I don't think I could impose equitably some type of resulting trust or constructive trust or unjust enrichment recovery in favor of some unknown set of beneficiaries—presumably the children. I just don't see that there would be any basis to do that, and I think the *Lingo* case is on point, as I understand it. So I am denying that exception as well.[11]

The Vice Chancellor denied the exceptions "for the reasons set forth from the Bench" and granted summary judgment in Mildred's favor.[12] We agree with the Vice Chancellor's

---

[9] *Id.* at *4-5.

[10] App. to Opening Br. at A38 (Tr. 30:9).

[11] *Id.* at A39-40 (Tr. 31:3-32:5).

[12] *Burke II*, 2017 WL 228275.

4

conclusions on ademption and the futility of permitting this matter to go to trial. Accordingly, we express no view with respect to the Master's standing analysis.

(6) "We review a grant of summary judgment *de novo*."[13] The Court must "determine whether, viewing the facts in the light most favorable to the nonmoving party, the moving party has demonstrated that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law."[14]

(7) In *In re Hobson's Estate*,[15] the Court of Chancery described the rule of ademption, which provides:

> When the specified item has been conveyed or lost prior to death or its identity has been so substantially changed that it cannot be traced directly to another form, the specific devise or legacy results in an ademption; that is, the specific devise or legacy becomes inoperative, it fails for lack of subject matter to effectuate the devise.[16]

Thus, "[w]hen a testator has disposed of real estate during her lifetime, such disposition works an ademption of the specific devise" and "the rights of devisees do not attach by way of substitution to the proceeds of its sale or to other property subsequently acquired by the testator."[17] There, the Court of Chancery concluded that, "it cannot be denied that the proceeds from the sale are so different that they cannot be regarded as the same or as

---

[13] *Law v. Law*, 753 A.2d 443, 445 (Del. 2000) (citations omitted).

[14] *Walls v. Ford Motor Co.*, 160 A.3d 1135, 2017 WL 1422626, at *2 (Del. Apr. 21, 2017) (TABLE) (citation omitted) (internal quotation marks omitted).

[15] 456 A.2d 800 (Del. Ch. 1982).

[16] *Id.* at 802.

[17] *Id.*

5

standing in place of that property."[18] This result follows irrespective of the testator's actual intent.[19] "In fact, the application of the rule may, in many instances, defeat the intention of the testator."[20]

(8) Kevin contends that these principles do not apply in this case, arguing that the Will provided that he and his siblings ultimately were to receive the proceeds of the sale. However, the sole focus of the ademption analysis here is the devise of the Property to Mildred as trustee. Under settled Delaware ademption doctrine, Burke's sale of the Property worked an ademption of that devise, which in turn defeated any interests that might otherwise have arisen.[21] The material facts (*i.e.*, the terms of the Will, the sale of the Property, and Burke's death) were not in dispute. Thus, the Court of Chancery properly granted summary judgment in Mildred's favor on the ademption question.

(9) Additionally, we perceive no error in the Court of Chancery's determination that permitting the matter to go to trial would be futile. Kevin contends that "many potential outcomes" could result from a trial, including his "ability to procure a benefit for the [e]state and to recoup his legal fees . . . ."[22] However, as Kevin has acknowledged, Mildred is the sole beneficiary of the estate, and any recovery nominally for the benefit of the estate would be, in reality, for her benefit alone. Additionally, this

---

[18] *Id.*

[19] *Id.*

[20] *Id.* (citing *Curtis v. Curtis*, 2 A.2d 88 (Del. Ch. 1938); *Wolcott v. Shaw*, 2 A.2d 913 (Del. Ch. 1930)).

[21] *See id.* ("[T]he will is to be read as though the bequest had been expunged from the will.").

[22] Opening Br. at 28 (citing *Lingo v. Lingo*, 3 A.3d 241, 244 (Del. 2010)).

Court's decision in *Lingo v. Lingo*[23] supports the Court of Chancery's view that it should not alter Burke's testamentary scheme by imposing a constructive trust in favor of a beneficiary other than Mildred.[24]

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Court of Chancery be, and the same hereby is, AFFIRMED.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice

---

[23] 3 A.3d 241 (Del. 2010).

[24] *See id.* at 243, 245-46 (affirming the Court of Chancery's refusal to reduce the inheritance of an incapacitated woman's daughter, who the court found acted as a "faithless fiduciary" as the mother's attorney-in-fact, because doing so "would conflict with [the mother's] clearly expressed testamentary intent[,]" and the Court of Chancery's order requiring the daughter to return misappropriated assets to her mother was the appropriate remedy, even though those assets ultimately would be inherited by the daughter upon her mother's death).