Robert W. Bascom, S.
We are petitioned by one of two executors to construe the sixth clause of the will of Helen C. Sheldon, dated February 10, 1958. She died June 29, 1963 and the will was probated July 24,1963. The clause to be construed reads: “I give and bequeath my One Hundred Seventy-One (171) shares of stock in the First National Bank of Hudson Falls to my son Melville A. Sheldon.” The named legatee is a son of testatrix and a coexecutor of the will.
Subsequent to the execution of the will and in July, 1960 the said bank declared and paid a 20% stock dividend, thereby increasing testatrix’ stock ownership from 171 shares to 205, which she owned at her death. Shortly prior to her death, however, the stockholders of the bank had approved of a merger with the First National Bank of Glens Falls, by which the Hudson Falls stockholders would receive 1.8 shares of Glens Falls for each share of Hudson Falls. This merger, however, was not approved by the appropriate banking authorities and did not become effective until July 12, 1963, some two weeks after Mrs. Sheldon’s death. The question thus is, who owns the resulting 369 shares of First National Bank of Glens Falls and the dividends declared thereon since the death of testatrix.
We of course seek the intent of the testatrix in determination of the question and look to the will as a whole and the circum *1092 stances surrounding its execution. Other dispositive clauses of the will specifically devise some real estate to a daughter and bequeath her a certain promissory note; the testatrix’ dwelling was specifically devised to the petitioning coexecutor, a son; an equal and specified number of shares of stock in some 10 corporations were bequeathed to the three children equally. Bach of several grandchildren was bequeathed a sufficient number of shares in a named savings and loan association to equal a thousand dollars, with provision for a gift over if any of them had predeceased testatrix, and with provision for their being retained by trustees during the minority of any grandchildren; the residue was devised and bequeathed equally to the three children. There is no mention of what was to become of stock splits, stock dividends or extraordinary dividends, if any, either on the stocks in question or on those of the 10 other named corporations bequeathed in the clause immediately following that to be construed. In all likelihood the testatrix had no intent relative thereto, as the question probably did not occur to her. All we know of the circumstances existing when the will was made is that she then owned the 171 shares.
The respondent coexecutor, the legatee under the sixth clause, contends that the legacy of the stock was specific. With this contention we agree and so hold. The use of the word “my” unquestionably points to, designates and identifies the particular shares testatrix owned when the will was made, still owned at her death, and which she desired the legatee to receive in kind (Matter of Security Trust Co., 221 N. Y. 213). He further contends, however, that such specific legacy carried with it all avails of stock dividends declared after the will was made, and that he is entitled not to the 171 shares but to 205 shares of Hudson Falls, which has now become 369 shares of G-lens Falls. He relies on Matter of Tracy (33 Misc 2d 719); Matter of Griffing (11 A D 2d 709); and Matter of Hicks (272 App. Div. 594, affd. 297 N. Y. 924). With this contention we cannot agree. It is true that in Tracy a specific legacy of bank stock was held to carry with it a 100% stock dividend declared after the date of the will. The case was unusual in that the testatrix there was giving stock not that she owned but that was owned by a trust created prior to the execution of her will, over the disposition of which she had a general power of appointment. The decision turned largely on the fact that section 17-a of the Personal Property Law made such stock dividends a part of the principal of the trust and under the peculiar wording of the will an intent to dispose of the entire corpus of the trust to the specific legatees was found. That is not our case. Both *1093 Griffing and Hicks are also distinguishable in that in them a stock split, as distinguished from a stock dividend, was involved. A stock split differs from a stock dividend in that in the former the number of shares of capital is increased, with a corresponding decrease in the value per share, and surplus is not altered nor earnings segregated (Matter of Fosdick, 4 N Y 2d 646, 653). In the latter a transfer of surplus or undivided profits to capital takes place. Therein lies the distinction between what we deem to be the respective rules with reference to ■specific legacies of stock. Stock splits follow the gift, stock dividends do not, absent a clear intent of the testatrix that they shall (Matter of Howe, 15 A D 2d 396, affd. 12 N Y 2d 870; Matter of Braim, 219 N. Y. 263; Matter of Bradley, 38 Misc 2d 945). If respondent’s argument were correct, he could successfully contend that he was entitled to all ordinary dividends which had been paid subsequent to the date of the will and which happen to have been paid in cash instead of in stock.
The sixth clause of the Sheldon will is therefore construed as effectively bequeathing only 171 shares of First National Bank of Hudson Falls to Melville A. Sheldon as a specific legacy. As such legatee, title thereto vested in him on the death of the testatrix. He is therefore entitled to any ordinary dividends declared and paid thereon since her death (Matter of Flynn, 36 Misc 2d 97; Matter of Strasenburgh, 136 Misc. 91). The merger with the Glens Falls bank not having become effective until after the death of testatrix, and after the 171 shares of Hudson Falls stock had vested in the respondent legatee, it follows that he is now entitled to 307.8 shares of First National Bank of Glens Falls, plus any ordinary dividends declared and paid thereon since the merger, with an appropriate adjustment for estate taxes. The balance of the stock and any dividends declared and paid by either bank on such balance since the date of death, fall into the residuary estate.