In the Matter of the Estate of DENNIS V. MCCARTHY, Deceased.

Fourth Department, October 31, 1975

*Harris, Maloney & Horwitz (Richard J. Evans* of counsel), for Thomas L. Mooney, appellant.

*Fleischer, Dwyer & Embser (W. Joseph Embser* of counsel), for Citizens National Bank & Trust, respondent.

*Shane & McCarthy (G. Sidney Shane* of counsel), for charitable residuary legatee, respondent.

*Louis J. Lefkowitz, Attorney-General (Eugene A. Panfil* and *Michael G. Wolfgang* of counsel), for charitable beneficiaries, respondents.

GOLDMAN, J. Thomas L. Mooney, a residuary legatee under the will of Dennis V. McCarthy, appeals from those parts of an order of Surrogate's Court, Allegany County, which denied his prayer (1) that accretions due to certain stock splits be declared to accrue to the residuary estate rather than to the named legatees of the original stock; and (2) that a residuary bequest to St. Elizabeth's Convent be declared to have lapsed.

By will dated January 3, 1956 the testator left 100-share blocks of various oil company stocks to several religious institutions, in bequests in the following form: "I give and bequeath to St. Paul's Abbey, Newton, New Jersey, 100 shares of Midwest Oil stock". One such bequest was made to "St.

Elizabeth's Convent, Allegany, New York". In 1961 the testator executed a first codicil, the first clause of which recited: "Inasmuch as I have sold all of my Argo Oil stock since the making of said Last Will and Testament and desire to substitute to the beneficiaries of my Will to whom I bequeathed Argo Oil stock certain other oil stocks". In each of the next 8 clauses he bequeathed to a named religious organization 100 shares of a named oil company and stated that the bequest was "in lieu and in place of the 100 shares of Argo Oil stock" mentioned in a cited paragraph of the will. The codicil also provided that if his wife should predecease him (as she did), the residue of the estate would be divided equally among four legatees, one of whom was the appellant, Thomas Mooney, and another was "St. Elizabeth's, Allegany, New York". In a second codicil executed in 1965 he made several more bequests of 100-share blocks of oil stocks to religious organizations, in each case reciting that the new bequest was "in lieu and in place of 100 shares" of a different oil stock previously bequeathed.

In the interval between the making of the several bequests in his will and codicils and the death of the testator, various stocks underwent splits, name changes or mergers. Our first question is whether the new shares thereby generated should, as the Surrogate held, accrue to the named legatees of the original stock or whether they should, as appellant urges, accrue to the residuary estate. The problem of dealing with stock splits, occurring in the period between the writing of a testamentary instrument and the death of the testator, is subject to no hard and fast principle. The Estates, Powers and Trusts Law sets forth no unequivocal rule or standard. The cardinal and governing principle in this, as in all will construction matters, is to ascertain the testator's intent (*Matter of Hayes,* 263 NY 219, 222; *Matter of Rooker,* 248 NY 361, 364; *Matter of Fitch,* 281 App Div 65, 68; Ann 46 ALR3d 7, 23; 36 Albany L. Rev. 182). There can be no doubt from a reading of the will and codicils that the testator was a deeply religious man and wanted several religious organizations of his faith to share generously in his substantial estate.

We dealt with stock splits and stock dividends in *Matter of Howe* (15 AD2d 396, 398, affd 12 NY2d 870), where we held that when stock is specifically bequeathed, the avails of such stock accrue to the specific legatee. Quoting from *Matter of Hicks* (272 App Div 594, 597, affd 297 NY 924), we noted that

"[a] very slight indication of an intention to give shares in testator's ownership at the time of the making of a will is sufficient to make the legacy specific [citing cases]". In *Matter of Hicks (supra)* such an intent was inferred where a bequest of stock was contained in the same paragraph with bequests of various items of personal property to the same person, even though the testator did not use the word "my" in referring to the shares. In *Matter of Howe (supra)* a bequest of 500 shares of stock was exempted from payment of taxes, debts and expenses of the estate and made in a paragraph containing specific bequests of other property. It further appeared that the testator owned over 12,000 shares of such stock at the time of the bequest. We held that the bequest was specific and that new shares resulting from a split accrued to the specific legatee. In the instant case, while the record does not show directly how many shares of the several securities the testator owned at death or on the dates when the will and codicils were executed, it does show that the estate owned over 9,000 shares one year after the death of the testator. More than 7,000 of those were oil stocks, whereas the total number of oil shares bequeathed to named legatees was only 2,700, comprised of 27 gifts of 100 shares each. Additional evidence that the testator intended specific bequests is found in the recitation in the first codicil, quoted above. Had the bequests been general, the sale of the Argo Oil shares would not have affected the legacies and a change in the will would have been unnecessary. Furthermore, the following observation is pertinent: "When a testator bequeaths stock (specifically or generally) and owns such shares at the time of execution, more probably than not he is thinking of the stock he owns at that time. Since a stock split reduces the value of the individual shares as well as the interest in the corporation each represents, the individual shares become materially different from those the testator was thinking of when he executed the will." (Fifth Report Temporary Comm. on Estates, pp 460–461, quoted in EPTL 1-2.16, Supp Practice Commentary 1970, McKinney's Cons Laws of NY, Book 17B, Pocket Part 1975–1976, p 10.) See, also, *Matter of Volckening* (75 Misc 2d 221, 224–225). The Surrogate properly held that proceeds of the stock split accrued to the named legatees. The stocks which were the subject of name changes and mergers follow the same rule, as the successor securities were mere substitutions for them.

The second question is whether the residuary bequest "to St. Elizabeth's, Allegany, New York", made in the first codicil, has lapsed. The Surrogate correctly found that the "St. Elizabeth's" there mentioned is the same organization referred to as "St. Elizabeth's Convent" in one of the specific bequests of oil stock. The record shows that the original St. Elizabeth's Convent in the Village of Allegany was dedicated in 1861. In 1956, construction began on a new convent building on the same parcel of land. Meanwhile, the "old convent" continued to be occupied as a convent and used as an academy for girls. When the "new convent" was completed in 1958, the nuns took up residence there. The old convent continued to be used as an academy for girls. That use was discontinued in 1961, and thereafter the building was used as a residence for aged women and as a convent for the nuns who cared for them. During that time it was popularly known as St. Elizabeth's Residence. The new building is now known as St. Elizabeth's Convent and Motherhouse. It is the principal business office and Motherhouse of the same religious order which built the original St. Elizabeth's Convent on the same parcel of land more than a century ago. That order has been incorporated since 1934 and is presently known as "Franciscan Sisters of Allegany, N.Y., Inc.". Because "St. Elizabeth's" was not a separate corporate entity eligible to take, the executor petitioned for construction of the residuary bequest. Following proceedings to which the present appellant was not a party, the Surrogate decreed, in an order dated October 4, 1973, that the bequest to St. Elizabeth's was to be "paid over to the officers and trustees of the Franciscan Sisters of Allegany, N.Y., Inc., to be applied to the use and benefit of what is commonly known as St. Elizabeth's Residence".

Subsequent to the decree and order, appellant petitioned the Surrogate, pursuant to SCPA 209, to reopen the construction proceedings and to vacate certain portions of the decree, including the part relating to the "St. Elizabeth's" bequest, on the ground that the executor failed to issue or serve a citation on him. The proceedings were reopened, but in an order dated February 21, 1974, which is the order from which this appeal is taken, the court reaffirmed the October 4, 1973 order insofar as it related to the "St. Elizabeth's" bequest. Appellant notes that in November, 1973, approximately a month after the October 4 order, the old St. Elizabeth's Convent building was demolished and the Franciscan Sisters of Allegany ceased

to maintain a residence for the aged. Hence, the order as it now stands, directs that the bequeathed assets be applied to the use and benefit of a defunct enterprise. Contrary to appellant's contention, that does not, however, require us to hold that the residuary bequest to St. Elizabeth's is now incapable of fulfillment and should be deemed to have lapsed in favor of the remaining residuary legatees. It is clear that when the testator made his bequest to "St. Elizabeth's" the object of his bounty was not merely an old edifice of brick and mortar; rather it was the religious institution which was headquartered there. Nor was his intent to benefit that institution limited to any particular one of its purposes or enterprises; be it the housing of nuns, the education of girls or the care of the aged. As the Surrogate noted: "The very fact that he had his attorney turn from the designation of 'St. Elizabeth's Convent' [which was used in the 1956 will] to 'St. Elizabeth's' and increase the interest of the association by way of a share of the residuary in the first codicil in 1961, [which] continued unchanged in 1965 is evidence that he was aware of the reorientation of its activities". Yet his desire to benefit St. Elizabeth's persisted and grew. Furthermore, he placed no restriction or condition on the use to which St. Elizabeth's could put the bequeathed assets. The fact that the testator's bequests to religious institutions were so numerous and comprised such a large part of his estate fortifies the conclusion that his bequest to St. Elizabeth's was a bequest to the still-flourishing institution and not to the now-demolished building. The rule is well settled that where the intended recipient of a charitable bequest, though ineligible to take because defectively designated or unincorporated, is a branch or subsidiary of a parent corporation whose charitable purposes are like those which prompted the bequest, the parent corporation will be permitted to take in order to sustain the gift *(Johnston v Hughes,* 187 NY 446, 450; *Kernochan v Farmers' Loan & Trust Co.,* 187 App Div 668, affd 227 NY 658). We conclude that the Surrogate below correctly ordered the bequests to "St. Elizabeth's" and to "St. Elizabeth's Convent" to be paid over to the officers and trustees of the Franciscan Sisters of Allegany, N. Y., Inc., notwithstanding the fact that St. Elizabeth's Residence no longer exists. Furthermore, it appears that the testator intended the bequest to be applied to any and all of the charitable objects and purposes of the Franciscan Sisters, and not only to the care of the aged. It sufficiently appears from the will and codicils that he desired the bequest

be devoted to the objects and purposes of the Franciscan Sisters. Accordingly, the order appealed from should be modified to provide that the bequests be applied to charitable purposes in the manner chosen by the officers and trustees of the Franciscan Sisters of Allegany, N.Y., Inc. We reach this result without reliance on the cy pres doctrine. Were it necessary to apply that doctrine, however, the result would be the same. Here the requisite general charitable intent was present (cf. *Matter of Syracuse Univ. [Heffron]*, 3 NY2d 665). The fact that the bequest here created an outright charitable gift rather than a trust does not bar application of the doctrine (EPTL 8-1.1, subd [d]; *City Bank Farmers Trust Co. v Arnold*, 283 NY 184, 194; *Matter of Fairchild*, 15 Misc 2d 272; *Matter of Kashiwabara*, 11 Misc 2d 426; *Matter of Dobbins*, 206 Misc 64).

On October 4, 1973, when the Surrogate made his order from which this appeal is taken, the structure which was the original convent was still in existence. It was demolished about one month later, in November 1973. The Surrogate in paragraph 4 of his order directed that the bequest "be applied to the use and benefit of what is commonly known as St. Elizabeth's Residence". To carry out the intent of the testator that the bequest be to the Franciscan Sisters, and not to the building, the order should be modified by striking therefrom the quoted statement above and by inserting in its place "be paid to the officers and trustees of the Franciscan Sisters of Allegany, N.Y.".

MARSH, P. J., MOULE, MAHONEY and WITMER, JJ., concur.

Order unanimously modified in accordance with opinion by GOLDMAN, J., and as modified affirmed, with costs to all parties filing briefs, payable out of the estate.