Joanne S. GUY, Jeanne S. Hubbard and Mabel Suzanne Guy, Appellants,

v.

Miriam Jeannine M. CRILL, et al., Appellees.

No. 05–82–00427–CV.

Court of Appeals of Texas, Dallas.

June 13, 1983.

Robert B. Payne, John Guittard, Payne, Spradley & Vendig, Dallas, for appellants.

Douglas A. Cawley, Johnson, Swanson & Barbee, Robert C. McGuire, Skibell & McGuire, Dallas, for appellees.

Before GUITTARD, C.J., and STOREY and GUILLOT, JJ.

GUITTARD, Chief Justice.

In this suit by an executor to construe a will, the principal question is whether a specific bequest of corporate stock was adeemed by a reorganization and merger resulting in issuance to the testatrix of a different number of shares in a different corporation. Also presented are questions concerning the effect of stock dividends and stock splits, whether the stock awarded to the two residuary beneficiaries was properly chargeable with the value of personal property received by them from the estate, and whether the court properly admitted the testimony of an attorney concerning oral statements of the testatrix. The probate court held that the bequest was not adeemed, gave the specific legatees rather than the residuary beneficiaries the benefit of stock dividends and stock splits, and charged the residuary beneficiaries with the value of personal property they had previously received. We affirm.

The material facts are not disputed. The testatrix, Miriam Frances Grice, was the owner of 2800 shares of stock of First National Bank in Dallas when she executed her will in 1965. She made seven separate bequests of these shares in the following form:

To the individuals listed below, I give and bequeath the following:

A. To my niece, JOANNE SMITH GUY, of Dallas, Texas, if she shall survive me, Six Hundred (600) shares of the capital stock of First National Bank in Dallas, Dallas, Texas, *together with all dividends, rights and benefits declared thereon at the time of my death, and all rights and benefits thereof.* [Emphasis added.]

Six similar bequests follow, all of which contain the language emphasized above. The residue of the estate was bequeathed to two nieces, Joanne Smith Guy and Jeanne Smith Hubbard, the present appellants, who are also beneficiaries of two of the specific bequests.

After the testatrix made her will, and before she died in 1980, various capital changes occurred with respect to the stock, but no change was made in the will. Several stock dividends and stock splits were declared, and the bank's capital structure was reorganized, with the result that all of Mrs. Grice's shares, except 211 shares previously transferred to certain of the named legatees,[1] were exchanged for 8182 shares in First International Bancshares, Inc., a corporation not engaged directly in banking, but owning stock in various banking corporations, including the successor to First National Bank in Dallas. These shares were the principal asset of Mrs. Grice's estate, the residuary assets being insufficient to pay taxes and expenses of administration. Accordingly, the court ordered the executor to sell the residuary property, except certain household furnishings previously delivered to the residuary beneficiaries, and to distribute the remaining shares to the specific legatees in proportion to the number of shares bequeathed to them by the will.

On this appeal the residuary beneficiaries challenge the holding of the probate court that the specific bequests were not adeemed by reorganization of the capital structure of First National Bank in Dallas. Conceding the absence of controlling Texas authority, they assert the "majority rule" to be that the test of ademption is not the supposed intention of the testator but rather whether the change in the subject of the bequest has been one of substance rather than form.[2] They insist that the reorganization effected a change of substance rather than form, thus adeeming the specific bequests. The other specific legatees deny the "majority rule" to be as asserted, and cite authorities

1. The probate court found that these transfers were not advancements and disregarded them in final distribution of the estate. No complaint of this finding is made on this appeal.

2. Among the authorities cited by appellants are *Pepka v. Branch,* 155 Ind.App. 637, 294 N.E.2d 141 (1973); *First Nat'l Bank v. Perkins Inst.,* 275 Mass. 498, 176 N.E. 532 (1931); *In re Horn Estate,* 317 Pa. 49, 175 A. 414 (1934).

holding that the intentions of the testator cannot be defeated by corporate merger, reorganization, or an exchange of shares. Consequently they argue, a specific bequest of shares of stock is not necessarily adeemed when the exact thing given by the will cannot be physically passed to the legatee, but the specific bequest is effective if the new stock can be identified as a substitution for the old.[3]

We find it unnecessary to decide this general question because we conclude that in this case the intent of the testatrix is made clear by the particular provisions of the will. The primary inquiry in construing a will is to determine the intent of the testator. *Gee v. Read,* 606 S.W.2d 677, 680 (Tex.1980). Mrs. Grice did not limit the specific bequests to the particular shares in First National Bank specified in the will. She added, "together with all dividends, rights and benefits declared thereon at the time of my death, and all rights and benefits thereof." We hold that by this provision Mrs. Grice expressed her intent to include all "rights and benefits" flowing from her ownership of the stock in First National Bank in Dallas and that any change in the shares, whether of form or substance, is immaterial.

The residuary beneficiaries interpret the specific bequest more restrictively. They characterize the quoted words of each specific bequest as a "dividends declared clause," the scope of which is limited to "dividends, rights and benefits" declared but not received on the date of Mrs. Grice's death, excluding those received during her life. This interpretation nullifies the second part of the quoted provision, "and all rights and benefits thereof." These additional words are not so limited. They are apparently intended to broaden the scope of the specific bequests and to include "all rights and benefits of the stock previously mentioned." They cannot reasonably be interpreted to mean, as the residuary beneficiaries suggest, "all rights and benefits of all dividends, rights and benefits declared thereon at the time of my death." "Thereof" is obviously parallel to "thereon," both referring back to the shares of stock previously mentioned.[4]

So interpreted, both parts of the "together with" clause can be given effect—the first part including cash dividends and other rights and benefits declared but not realized at the death of the testatrix and the second part including, more broadly, other rights and benefits flowing from the stock, though declared and realized before her death.

The residuary beneficiaries also argue that they are entitled to all of the Bancshares stock because of the "after-acquired property" provision of the residuary clause. By this clause the testatrix bequeathed to her nieces Joanne Smith Guy and Jeanne Smith Hubbard "[a]ll the rest, residue and remainder of the property which I may own at the time of my death ... *including all property which I may acquire or become entitled to after the execution of this will,* including all lapsed legacies and devises..." (emphasis added). The residuary beneficiaries insist that the Bancshares stock was property acquired "after the execution of this will" and, therefore, falls within the residuary clause.

This argument ignores the words "rest, residue and remainder" in the residuary clause and assumes the principal point at issue, that is, whether the stock in question is disposed of by the specific bequests. If it

---

**3.** Among the authorities cited by appellees are *In re Estate of Watkins,* 284 So.2d 679 (Fla. 1973); *Goode v. Reynolds,* 208 Ky. 441, 271 S.W. 600 (1925); *Matter of Estate of Dennis V. McCarthy,* 49 A.D.2d 204, 374 N.Y.S.2d 203 (N.Y.Sup.Ct.1975); *In re Hoyt's Will,* 55 Misc.2d 240, 284 N.Y.S.2d 791 (Surrogate Ct. 1967); *In re Maher's Will,* 5 Misc.2d 135, 164 N.Y.S.2d 671 (Surrogate Ct.1957). Appellees also cite Section 2–607 of the Uniform Probate Code (not enacted in Texas); 80 *Am.Jur.2d Corporations,* § 1716; and *Annot.,* 46 A.L.R.3d 91.

**4.** This problem is an illustration that legalistic words such as "thereof," so frequently used by lawyers in an attempt at precision, sometimes serve instead to introduce vagueness and uncertainty.

is disposed of by the specific bequests, it is not within the residuary clause, no matter how inclusive the subsequent provisions of the residuary clause may be. As a corollary of our holding that the provisions of the specific bequests evidence Mrs. Grice's intent to bequeath all rights and benefits flowing from the original bank stock, we hold that the Bancshares stock is not within the residuary clause, and, therefore, not within the after-acquired property provision.

■ The residuary beneficiaries further contend that the probate court's distribution of the stock is contrary to the non-apportionment clause, which directs the executors to pay all estate and inheritance taxes "out of my residuary estate, without apportionment . . . without contributions by any recipient of such property." They point out that the judgment of the probate court leaves nothing in the residuary estate and directs that taxes and administration expenses remaining after consuming the residue be paid by all the legatees according to the percentage of stock received by each of them. This distribution, they say, is contrary to Mrs. Grice's intent to leave sufficient property in the residuary estate for the non-apportionment clause to be given effect.

We cannot agree. The charges against the specific legatees are solely the result of the insufficiency of the residuary estate to pay the taxes and expenses. The same charges would have been required if the Bancshares stock had not been substituted and the original bank stock had remained. Thus, the insufficiency of the residuary estate cannot properly be advanced as a reason to limit our interpretation of the provisions of the specific bequests.

■ Alternatively, the residuary beneficiaries contend that the probate court erred in permitting the legatees of the old bank stock to receive the benefits of all stock

dividends since the date of the will. In this respect, they seek to distinguish between stock dividends and stock splits, and on that ground they would distinguish cases holding that stock splits do not result in ademption of shares specifically bequeathed.[5] Again, we find it unnecessary to decide this general question because of the language of this particular will. We hold that stock dividends, as well as stock splits, are "rights and benefits" flowing from the original bank stock, and, therefore, are bequeathed by the will in the same proportions as the stock held by the testatrix when she made her will.

Finally, the residuary beneficiaries contend that the probate court erred in making an offset against the stock awarded them for the value of the personal property previously received by them from the executor. The property in question consists of household furnishings located in Mrs. Grice's home. The home was devised to her niece, Joanne Smith Guy. The furnishings were valued in the inventory at $6,468, and, since they were not the subject of any specific bequest, they were within the residuary clause and, therefore, subject to sale for payment of taxes and expenses of administration. In order to avoid moving and storage costs, the furnishings were distributed to her nieces, the residuary beneficiaries, who signed receipts for them. Joanne Smith Guy testified that for sentimental reasons she preferred that the executor distribute this property to her rather than sell it. The probate court provided in its judgment that since this property should have been used to pay taxes, its value should be offset against the stock distributed to the residuary beneficiaries.

This offset, say the residuary beneficiaries, is contrary to the letter and spirit of the Texas Probate Code governing independent administration, particularly to sections 5A(b) and 145(h), which free an indepen-

---

5. The only authorities cited are *In re Sheldon's Will*, 42 Misc.2d 1091, 249 N.Y.S.2d 953 (Surr. Ct.1964), and 19 *Am.Jur.* "Corporations" § 898. The Texas cases cited and distinguished are *Bergin v. Bergin*, 159 Tex. 83, 315 S.W.2d 943 (1958); *Morris v. Pickett*, 503 S.W.2d 344 (Tex.Civ.App.—San Antonio 1973, writ ref'd n.r.e.); *O'Neill v. Alford*, 485 S.W.2d 935 (Tex.Civ.App.—Houston [1st Dist.] 1972).

dent executor designated in the will from control of the probate court. Although they admit that a distribution before closing of the estate is subject to the claims of creditors, they insist there is no law providing that after an unqualified distribution is made by an independent executor, the interest received by the legatee can be subjected to any subsequent charges.

■ We cannot agree. The court's order cannot be considered an interference with the administration by the independent executor because the executor initiated this action to obtain the directions of the probate court concerning distribution of the assets and allocation of the debts, taxes, and costs of administration. The value of the household furnishings cannot be charged against the other specific legatees without defeating, to that extent, Mrs. Grice's expressed intention that the taxes and expenses be paid out of the residuary estate rather than out of the specific bequests. Neither can this amount be charged against the executor because he acted with the express consent of the residuary beneficiaries. We see no point in requiring the executor to bring a separate suit against the residuary beneficiaries to recover the value of the property prematurely distributed to them. Instead, we hold that the probate court properly charged this amount against the stock they were entitled to receive under their specific bequests.

Finally, the residuary beneficiaries complain of the admission of testimony of Mrs. Grice's attorney concerning statements she made to him with respect to the meaning of certain provisions of the will. We need not consider this point because we hold that the language of the will is unambiguous. In view of this holding, the admission or exclusion of this evidence cannot affect our interpretation of the will.