**Matter of Juilliard Sch.**

2024 NY Slip Op 31571(U)

May 2, 2024

Supreme Court, New York County

Docket Number: Index No. 162210/2023

Judge: John J. Kelley

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

**SUPREME COURT OF THE STATE OF NEW YORK**
**NEW YORK COUNTY**

PRESENT: **HON. JOHN J. KELLEY**        PART       **56M**

*Justice*

------------------------------------------------------------------X

In the Matter of

THE JUILLIARD SCHOOL,

                Petitioner.

------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 162210/2023 |
| MOTION DATE | 04/12/2024 |
| MOTION SEQ. NO. | 001 |

**DECISION, ORDER, AND JUDGMENT**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 1, 2, 3, 4, 5, 6, 7 were read on this motion to/for      MISC. SPECIAL PROCEEDINGS      .

In this proceeding pursuant to N-PCL 555, the petitioner, The Juilliard School (Juilliard), seeks to modify an endowment fund that had been established under a charitable gift to permit it to present classical vocal debut recitals underwritten by the Alice Tully Foundation, for the Alice Tully Vocal Arts Debut recitals, at venues other than Alice Tully Hall. Specifically, Juilliard wishes to modify the gift instrument to permit it to present Alice Tully Vocal Arts Debut recitals in venues that are smaller and more acoustically appropriate than Alice Tully Hall, in light of the annually decreasing attendance at those recitals. The petitioner served the Attorney General with the initiatory order to show cause and petition, and the Attorney General has expressly stated that her office has no objection to the proposed modification. The petition is granted.

NPC-L 555(b) provides, in relevant part, that,

> "[a] court, upon application of an institution, may modify a restriction contained in a gift instrument regarding the management or investment of an institutional fund if the restriction has become impracticable or wasteful, if it impairs the management or investment of the fund, or if, because of circumstances not anticipated by the donor, a modification of a restriction will further the purposes of the fund. . . . To the extent practicable, any modification must be made in accordance with the donor's probable intention."

NPC-L section 555(c) provides, in relevant part, that,

> "[i]f a particular purpose or restriction contained in a gift instrument on the use of an institutional fund becomes unlawful, impracticable, impossible to achieve, or

162210/2023  THE JUILLIARD SCHOOL vs.
Motion No.  001

Page 1 of 7

wasteful, the court, upon application of an institution, may modify the purpose of the fund or the restriction on the use of the fund in a manner consistent with the purposes expressed in the gift instrument."

In 1956, Alice Tully, a renowned opera vocalist, Juilliard graduate, and Corning Glassworks heiress, established a charitable foundation known as the Alice Tully Foundation (the Foundation), the purpose of which was to donate money to other organizations, including arts and culture organizations. In 1969, with funding provided either by Tully herself or the Foundation, Lincoln Center for the Performing Arts in Manhattan erected and opened Alice Tully Hall, a music performance venue with a seating capacity of 1,086. With a further $16 million gift from the Foundation, Alice Tully Hall was renovated in 2003. According to Juilliard, Tully initially had reservations about lending her name to Alice Tully Hall, despite her financial contributions thereto, because both Philharmonic Hall (now David Geffen Hall) and the New York State Theater (now the David H. Koch Theater) at Lincoln Center had at the time been "acoustical disasters," noting that she "did not want [her] name associated with a hall that would have bad acoustics." She ultimately relented, and became actively involved in the Hall's design, with a particular concern for attendees' comfort, and was satisfied that Alice Tully Hall was acoustically acceptable. Tully died in December 1993.

In 1996, Juilliard received a grant of $1,500,000 from the Foundation. As described in the September 12, 1996 gift instrument, as supplemented by an October 16, 1996 memorandum, the gift served two purposes: (a) to provide scholarships in voice and organ performance to advanced current students or recent Juilliard graduates who had demonstrated "superior talent and readiness for the rigors of a professional career" and who had "not yet had a New York City recital debut," and (b) to support an annual debut recital. The 1996 gift instrument, among other things, more specifically provided that:

> "[t]he Alice Tully Foundation has made a $1.5 million pledge to establish a memorial at The Juilliard School in her name. The grant, which is to be made over a 5-year period, will create an endowed fund for scholarships in voice and in organ, and will fund an annual debut concert for outstanding vocalists on the threshold of a professional career . . .

162210/2023  THE JUILLIARD SCHOOL vs.
Motion No. 001

Page 2 of 7

[* 2]

"The inaugural Alice Tully Vocal Arts Debut recital will take place early next fall. Modeled after Juilliard's William Petschek Piano Recital, this concert is intended to help advance an experienced young singer into a career under professional management. The concert will be presented, appropriately, in Alice Tully Hall. We expect this will be a visible and prestigious recital for a vocalist ready to embark on a professional career."

In light of the terms of the gift instrument, Juilliard committed to presenting the Alice Tully Vocal Arts Debut at Alice Tully Hall.

According to Juilliard, although the subject gift apparently was originally held as one fund, at some point, Juilliard divided it into two separate funds, one supporting scholarships in voice and organ (the Scholarship Fund), and the other supporting the Debut Recital (the Recital Fund). As Juilliard explained it, the amount allocated to the Recital Fund was based on the amount needed to produce sufficient income to support the costs of the debut recital, which initially was approximately $20,000 annually, with the balance allocated to the Scholarship Fund. By Juilliard's calculations, as of December 31, 2022, the combined total market value of the two funds was $2,456,775. Of that total, the Recital Fund's market value was $610,832, and the Scholarship Fund's market value was $1,845,943.

Juilliard asserted that it has committed to the active promotion of the young artists selected to perform at the recitals, and to making all reasonable attempts to fill Alice Tully Hall for those debut recitals. It further asserted that Juilliard also committed to obtaining reviews of the recitals in major newspapers and providing exposure for the artist to several artist managers. Although it expressly asserted that it has carried out, and will continue to carry out, those commitments, it contended the return on these efforts has declined over time. In this regard, Juilliard alleged that, over the past 15 years, the audience for debut recital performances generally had waned "in ways that would have been difficult to anticipate in the 1990s." Moreover, it asserted that "there has been a decline in attendance at Juilliard's debut recitals," despite its best efforts to attract an audience, including marketing efforts such as promotional radio advertisements with area classical music stations such as WNYC-FM and

[* 3]

WQXR-FM, social media advertising via Facebook, print advertisements, and outreach to Juilliard's broad network of donors, alumni, industry professionals, managers, and casting directors. Juilliard explained that it has allocated not only monies from the Recital Fund for these promotional efforts, but also from its other available funds.

As Alexandra Wheeler, Juilliard's vice president and chief advancement officer, explained it, despite these efforts,

> "the most recent Debut Recital, held at Alice Tully Hall on May 6, 2023 was attended by approximately 226 guests, roughly 23% of the Hall's capacity. On April 4, 2022, the Debut Recital at the Hall was attended by approximately 141 guests, roughly 14% of the Hall's capacity. At such greatly reduced capacity in a venue, both venue acoustics and the audience's perception of the significance of the event (both documented priorities of Ms. Tully) are adversely impacted. Performing to such a small audience relative to the capacity of the venue can also be demoralizing for artists, as it can create a perception of lack of appreciation and interest in their art. Notably, this decline in attendance pre-dates the covid-19 pandemic."

She continued that, since 2016, when Juilliard began keeping records of the numbers of attendees at the Debut Recital, which is held once per school year,

> "the attendance has never exceeded approximately 1/3rd of the Hall's capacity. Attendance from 2016 to 2019 was as follows: (a) in May of 2016 (during the September 2015 to May 2016 school year), 307 people attended; (b) in December of 2016 (during the September 2016 to May 2017 school year), 231 people attended; (c) in April of 2018 (during the September 2017 to May 2018 school year), 297 people attended; and (d) in November of 2018 (during the September 2018 to May 2019 school year), 260 people attended. (No Debut Recitals were held in the 2020 or 2021 school years due to the covid-19 pandemic). Furthermore, there is a negative impact on Juilliard's institutional reputation when it presents performances to relatively small audiences in such sizeable, prestigious venues as Alice Tully Hall, along with the reputation of Alice Tully Hall itself."

Wheeler, adverting to the conclusion of Juilliard's staff, averred that the decline of interest in the Debut Recital was not unique, and extended to all vocal concerts other than those of the most well-known and established artists. Rather, she asserted that only large symphonic and historical music performances, involving ensembles of at least 40-80 musicians performing together, continued to attract large audiences. Moreover, she noted that audience size had also declined at Juilliard's other significant vocal arts performances, known as the Honors Recital

**162210/2023 THE JUILLIARD SCHOOL vs.**
**Motion No. 001**

Page 4 of 7

[* 4]

and Juilliard Songfest. Hence, Wheeler explained that Juilliard had moved these performances from Alice Tully Hall to smaller, more appropriately sized venues, such as Merkin Hall at the Kaufman Music Center, which seats 459 audience members, and is located only two blocks away from Alice Tully Hall. She also reported that the costs associated with presenting live performances, including at Alice Tully Hall, had increased significantly, with an approximate increase of $6,300 in the standard venue rental fee of Alice Tully Hall over the past 10 or so years, ranging from $15,762 in 2012-2013 to $22,095 in 2021-2022, while the total budget for the Alice Tully Vocal Arts Debut recitals had historically been approximately $29,000 to $31,000. As Wheeler framed it, typically, Juilliard had spent the greater portion of these funds on the cost of renting Alice Tully Hall, in addition to associated labor costs, leaving only a relatively small amount of funds for costs such as commissions, additional musicians, advertising, honoraria for the singer and collaborating pianist, and the like. She stated that Juilliard has considered adding a livestreaming component to incorporate modern technologies and expand the reach and visibility of such recitals, but concluded that the cost of livestreaming these concerts would ultimately increase the already limited budget and, because the staff at Alice Tully Hall is unionized, such costs are larger than at other venues.

In light of these historical trends and existing conditions, Wheeler asserted that Juilliard was exploring the use of smaller, alternative venues, which would be equal in acoustic qualities, comfort, visibility, and prestige for the interested public, as well as for the benefit of the artists. She concluded that an alternative venue would also allow the funds to be used in a more cost-effective manner, which could result in more available funds for scholarships, thereby enhancing the overall benefit of the gift in accordance with the purposes for which it initially was given.

As the Court of Appeals has explained,

> "[w]hen a court determines that changed circumstances have rendered the administration of a charitable trust according to its literal terms either 'impracticable or impossible,' the court may exercise its cy pres power to reform the trust in a manner that 'will most effectively accomplish its general purposes'"

(*Matter of Wilson*, 59 NY2d 461, 472 [1983], quoting EPTL 8-1.1[c][1]; *Matter of Hummel*, 30 AD3d 802, 804 [3d Dept 2006]; *see Matter of Post*, 2 AD3d 1091, 1093 [3d Dept 2003]). The cy pres doctrine only applies where the testator's or donor's specific charitable purpose is no longer capable of being performed by the trust and the testator or donor had a general charitable intent (*see Matter of Wilson*, 59 NY2d at 472; *Matter of Hummel* at 30 AD3d at 804). Here, Juilliard demonstrated that changed circumstances have rendered it impracticable to administer the gift to the extent that the Foundation intended (*see Matter of McCarthy*, 49 AD2d 204, 209 [4th Dept 1975]), and it may be inferred that the Foundation's general intent was to make debut recitals more amenable to the artist's and audience approval. In accordance with the Foundation's intent to benefit Juilliard and encourage people to attend debut recitals, Juilliard has demonstrated that it would be appropriate to modify the restrictions set forth in the gift instrument to permit Juilliard to produce and present these recitals in smaller, acoustically favorable venues, where positive audience reaction and the potential for good public relations would enhance the purpose of the gift.

In light of the foregoing, it is,

ADJUDGED that the petition is granted, without opposition; and it is further,

ORDERED that the restrictions set forth in the September 12, 1996 Gift Instrument referable to the $1,500,000 gift from the Alice Tully Foundation to The Juilliard School, as supplemented by the October 16, 1996 memorandum, that required Alice Tully Vocal Arts Debut recitals to be performed at Alice Tully Hall, be, and hereby are modified, to authorize and permit The Juilliard School to present Alice Tully Vocal Arts Debut recitals, including both vocal and organ recitals, at other smaller venues in the City of New York that are acoustically and logistically appropriate, including, but not limited to, Merkin Hall at the Kaufman Music Center, the Paul Recital Hall, the Morse Recital Hall, and the Ellen and James S. Marcus Vocal Arts Studio at The Juilliard School itself, and music performance venues similar to those locations.

162210/2023  THE JUILLIARD SCHOOL vs.
Motion No. 001

Page 6 of 7

This constitutes the Decision, Order, and Judgment of the court.

_5/2/2024_
DATE

JOHN J. KELLEY, J.S.C.

| CHECK ONE: | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | X | GRANTED | | DENIED | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

162210/2023   THE JUILLIARD SCHOOL vs.
Motion No.  001